JEFFREY J. PYLE & another[1] *vs.* SCHOOL COMMITTEE OF
SOUTH HADLEY & others.[2]

Suffolk. February 6, 1996. - July 25, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED,
JJ.

*Statute,* Construction. *Constitutional Law,* Freedom of speech and press.
*School and School Committee,* Enforcement of discipline.

The clear, unambiguous and mandatory language of G. L. c. 71, § 82,
    protecting the right of public school students to freedom of expression
    admits of no exception or limitation for arguably vulgar, lewd or of-
    fensive language, absent a showing of disruption within the school.
    [285-287]

CERTIFICATION of a question of law to the Supreme
Judicial Court by the United States Court of Appeals for the
First Circuit.

*William C. Newman* (*John Reinstein* with him) for the
plaintiffs.

*Harry L. Miles* (*Edward J. Ryan, III,* with him) for the
defendants.

The following submitted briefs for amici curiae:

*Michael C. Hiestand* for Student Press Law Center.

*Stephen J. Finnegan* for Massachusetts Association of
School Committees, Inc.

*Deborah S. Steenland,* Assistant Attorney General, *Rhoda
E. Schneider & Virginia A. Greiman* for Commissioner of
Education & another.

---

[1]Jonathan Pyle.

[2]Donna Theroux-Cole, in her capacity as member of the school commit-
tee of South Hadley; Steven M. Marantz, individually and as chair of the
school committee; Robert L. Gouin, Mary Jo Moore, and Kevin Taugher,
individually and as members of the school committee; Charles F. Kimball,
individually and as interim superintendent of South Hadley schools; and
Paul Raymond, individually and as interim principal of South Hadley High
School.

*Michael J. Long* for Massachusetts Association of School Superintendents, Inc.

LIACOS, C.J. The plaintiffs, Jeffrey and Jonathan Pyle, sued the school committee of South Hadley, the interim superintendent of schools of South Hadley, and the interim principal of South Hadley High School (school) in the United States District Court for the District of Massachusetts (Federal District Court), claiming that the school's dress code violates their freedom of expression as protected by the First Amendment to the United States Constitution and G. L. c. 71, § 82 (1994 ed.). A Federal District Court judge granted the plaintiffs' motion for an injunction against enforcement of that part of the dress code which prohibits the wearing of apparel that "harasses, intimidates, or demeans an individual or group of individuals because of sex, color, race, religion, handicap, national origin or sexual orientation." The judge upheld, however, that part of the dress code prohibiting students from wearing clothing that "[h]as comments, pictures, slogans, or designs that are obscene, profane, lewd or vulgar." *Pyle* v. *South Hadley Sch. Comm.*, 861 F. Supp. 157, 168-170 (D. Mass. 1994). The judge determined that G. L. c. 71, § 82, "has no relevance . . . to the analysis of a school administrator's efforts to curb vulgarity and sexual innuendo." *Id.* at 168. The plaintiffs appealed. The United States Court of Appeals for the First Circuit vacated the ruling on the State law, deferred ruling on the Federal constitutional question, and certified the following question of State law to this court pursuant to S.J.C. Rule 1:03, § 3, 382 Mass. 700 (1981):

> "Do high school students in public schools have the freedom under G. L. c. 71, § 82 to engage in non-school-sponsored expression that may reasonably be considered vulgar, but causes no disruption or disorder?"

*Pyle* v. *South Hadley Sch. Comm.*, 55 F.3d 20, 22 (1st Cir. 1995). We answer the question certified in the affirmative.[3]

General Laws c. 71, § 82, states in relevant part:

---

[3]The facts of the underlying dispute are detailed in the opinion of the Federal District Court and need not be repeated here. See *Pyle* v. *South Hadley Sch. Comm.*, 861 F. Supp. 157, 160-164 (D. Mass. 1994). It is sufficient for our purposes to recite that the plaintiffs, at the time high school

"The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school. Freedom of expression shall include without limitation, the rights and responsibilities of students, collectively and individually, (*a*) to express their views through speech and symbols, (*b*) to write, publish and disseminate their views, (*c*) to assemble peaceably on school property for the purpose of expressing their opinions. Any assembly planned by students during regularly scheduled school hours shall be held only at a time and place approved in advance by the school principal or his designee. . . . For the purposes of this section and sections eighty-three to eighty-five, inclusive, the word student shall mean any person attending a public secondary school in the commonwealth. The word school official shall mean any member or employee of the local school committee."

The above-quoted section is one of a series of statutes outlining students' rights and responsibilities. See G. L. c. 71, §§ 82-86 (1994 ed.). As originally written, § 82 was a "local option statute," applying only to cities and towns that expressly accepted it. G. L. c. 71, § 86, inserted by St. 1974, c. 670. In 1988, without any change of wording, the section was amended and made applicable to all cities and towns within the Commonwealth. St. 1988, c. 137. The remaining sections, which protect students' rights pertaining to dress, personal appearance, and discipline on matters unrelated to school-sponsored activities, remain applicable only to cities and towns that accept them. G. L. c. 71, § 86.

This court has not had the opportunity to interpret this section of the statute. Our primary duty is to interpret a statute in accordance with the intent of the Legislature. *Sterilite Corp.* v. *Continental Casualty Co.*, 397 Mass. 837, 839 n.3 (1986), citing *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984). Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent. *Boston Neighborhood Taxi Ass'n* v. *Department of Pub. Utils.*, 410 Mass. 686, 690 (1991). *Sterilite Corp.* v. *Continental Casualty*

students, wore several T-shirts to school that school administrators found unacceptable and prohibited under the school dress code, but that no disruption or disorder was caused thereby.

*Co.,* 397 Mass. 837, 839 (1986). *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977). *Allen* v. *Commissioner of Corps. & Taxation,* 272 Mass. 502, 508 (1930). Where the ordinary meaning of the statutory terms yields a workable result, we need not resort to extrinsic aids of interpretation such as legislative history. *Bronstein* v. *Prudential Ins. Co.,* 390 Mass. 701, 704 (1984). We accord the words of the statute their ordinary meanings, however, with due regard to the statute's purposes. *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.,* 397 Mass. 416, 420 (1986). *Rambert* v. *Commonwealth,* 389 Mass. 771, 773 (1983). 2A Singer, Sutherland Statutory Construction §§ 46.01 et seq. (5th ed. & 1996 Supp.). See G. L. c. 4, § 6, Third (1994 ed.).

The statute is unambiguous and must be construed as written. See *Bronstein, supra.* "The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school." G. L. c. 71, § 82. The clear and unambiguous language protects the right of the students limited only by the requirement that any expression be nondisruptive within the school. The language is mandatory. The students' rights include expression of views through speech and symbols, "without limitation." There is no room in the statute to construe an exception for arguably vulgar, lewd, or offensive language absent a showing of disruption within the school.[4]

The parties agree that the authors of the bill intended to codify the First Amendment protection discussed in *Tinker* v. *Des Moines Indep. Sch. Dist.,* 393 U.S. 503 (1969). The defendants, however, argue that more recent Supreme Court

---

[4]A pamphlet issued by the student advisory committee of the Department of Education (department), advises students that "[u]nless the expression falls under one of the exceptions above [obscenity, defamation, fighting words, or incitement], the content of what you say is protected, and the school cannot restrict the activities through which you say it, unless those activities substantially disrupt the functioning of the school." The parties disagree whether the pamphlet constitutes a department guideline. See G. L. c. 71, § 85 (1994 ed.) (Board of Education may adopt guidelines to implement statutory provisions). Although not properly considered in construing the statute before us, we note that this and other documents published by the department, sponsor of the bill, support the view that students' rights were intended broad protection under the legislation. We place no reliance on these documents because the language of the statute is clear and unambiguous.

decisions in the area of students' First Amendment rights, see *Bethel Sch. Dist. No. 403* v. *Fraser*, 478 U.S. 675 (1986), and *Hazelwood Sch. Dist.* v. *Kuhlmeier*, 484 U.S. 260 (1988), have narrowed and redefined the holding of *Tinker* to allow school administrators to regulate vulgar or indecent speech in school-sponsored expressive activities. This may be true, but there is no reason to believe that these cases, decided more than ten years after the original enactment of G. L. c. 71, § 82, in any way limit the protection granted under the statute. Our Legislature is free to grant greater rights to the citizens of this Commonwealth than would otherwise be protected under the United States Constitution. The decision to do so rests squarely with the Legislature and we are not free judicially to create new limitations. See *Sterilite Corp.* v. *Continental Casualty Co., supra* at 839 n.3.[5]

Neither does the 1988 amendment to G. L. c. 71, § 86, which makes § 82 applicable to all cities and towns in the Commonwealth, evince a legislative intent either to broaden or restrict the content of § 82. The amendment did not in any way alter the language of the section. See St. 1988, c. 137. By the same token, the lack of legislative amendments immediately following the decision in *Bethel School Dist. No. 403* v. *Fraser, supra,* does not support the defendants' argument that the statute incorporates the holding of that case, i.e., permits school administrators to prohibit nondisruptive vulgar expression. The plain meaning of the statutory language limits students' rights of free expression only where such expression creates a disruption or disorder within the school.

For the reasons stated, we answer the question certified, "Yes." The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of this court, to the clerk of the United States Court of Appeals for the First Circuit, as answer to the question certified, and will also transmit a copy to each party.

---

[5]The parties and amici seek to raise a variety of constitutional, policy, and procedural issues (including plaintiffs' lack of standing) not within the scope of the certified question. We decline to address these issues as they are not properly before us.