van Gestel, Allan, J.
This matter comes before the Court on the Defendants’ Motion for Summary Judgment, Paper #28, and the Plaintiffs Cross Motion for Partial Summary Judgment, Paper #29. At issue is whether a certain Standard Contract with the City of Boston relating to a possible lease of premises from Bradston Associates, LLC (“Bradston”) by the Suffolk County Sheriffs Department (the “Sheriffs Department”) is valid and enforceable.

BACKGROUND

On October 8, 2002, this Court granted the then defendants’[2] motion to dismiss. Bradston appealed, successfully, but only as to Counts I, II and VIII of its complaint.[3] Those counts were for breach of contract, breach of the implied covenant of good faith and fair dealing and for a declaratory judgment. Further, those three counts only related to the Sheriffs Department and the Sheriff in his official capacity.[4] Consequently, only the Sheriffs Department and Sheriff Cabral, in her official capacity, remain as defendants and for them only as to Counts I, II and VIII of Bradston’s complaint.
Since the remand from the Appeals Court, the parties have conducted discovery and now cross-move for summary judgment.
At issue is the City of Boston Standard Contract and a statute that may affect its validity, c. 262, sec. 1 of the Acts of 1998. The statute provides as follows:
All contracts made by any department of the city of Boston or by any officer, board or official of the county of Suffolk having power to incur obligations on behalf of said county in cases where said obligations are to be paid for wholly from the treasury of said city, shall, when the amount involved is $10,000 or more ... be in writing; and no such contract shall be deemed to have been made or executed until the approval of the mayor of said, city has been affixed thereon in writing and the auditor of said city has certified thereon that an appropriation is available therefor or has cited thereon the statute under authority of which the contract is being executed without an appropriation.
(Emphasis added.)
Both parties, and the Appeals Court, apparently agree that St. 1998, c. 262, sec. 1 applies in this case. See Rule 1:28 Memorandum at p.6. This Court will join them on this point, although, as will be seen, the monies in issue will not be paid “wholly from the treasury” of the City of Boston, but rather will come in major part from State grants or local aid.
There is no disagreement that: (1) the amount of the lease and contract involved is $10,000 or more; (2) the Standard Contract and lease are in writing; and (3) the Mayor’s written approval has been affixed thereon.
Where the parties differ is whether “the auditor . .. has certified thereon that an appropriation is available therefor or has cited thereon the statute under authority of which the contract is being executed without an appropriation. ”
The sole signature by the Auditor herself appears in a signature box on the Standard Contract that reads:

AUDITOR

APPROVED AS TO AVAILABILITY OF APPROPRIATION OR PURSUANT TO ARTICLE 12.2 OF THE GENERAL CONDITIONS IN THE AMOUNT OF $ 0.00

/s/ Scúly D. Glora

The foregoing was placed on the Standard Contract in early September 2001.
There is also a stamp on the Standard Contract, dated over three months after the Auditor’s signature, that reads, simply “EXECUTED” and is signed by Cynthia M. Johnson, a senior accountant for the City of Boston Auditing Department.
Higher up on the page of the Standard Contract is a box with a number of different items included. Among them, under the heading “Project/Grant,” there appears the following: “SUF02056.”
The defendants contend that c. 262, sec. 1 has not been complied with because the auditor did not certify that an appropriation was available, nor did she cite thereon any statute under authority of which the contract was being executed without an appropriation.
*378 The plaintiff argues that there was enough, particularly because of the “EXECUTED” stamp and because “SUF02056" is an internal City Auditing Department code that was used for money received from State Plan 8910-0000 in the fiscal year in question. The 8910-0000 refers to the line item in the State budget providing for an unallocated gross amount to be received from the Commonwealth by the Suffolk Sheriffs Department. Although the provision was for the Suffolk Sheriffs Department, the grant, apparently, would be paid into and be disbursed from the City of Boston treasury.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 283 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
When the opposing party has the burden of proof at trial, the other party may be successful on a summary judgment motion if it can show that the opposing party has no reasonable expectation of proving an essential element of that party’s case. Opara v. Massachusetts Mutual Life Insurance Company, 441 Mass. 539, 544 (2004).
Here, of course, there are cross motions and so the burden may well shift back and forth between the parties. Also, for that reason, the Court will address the motions separately, starting with the defendants’ which was docketed first.
There are subtle legal complexities in this matter because, although dealing with the Suffolk County Sheriffs Department, unlike all other county sheriffs’ departments in Massachusetts, in Suffolk County it is only the City of Boston, and not the other communities in Suffolk County, that controls the Sheriffs Department and pays for its operations from the City treasury. See Boston v. Chelsea, 212 Mass. 127 (1912). At the same time, nearly all of the Suffolk Sheriffs Department’s funding actually comes from grants or local aid from the Commonwealth, not from the general revenues of the City of Boston.
Further complicating this situation, is the fact that both Bradston and the City Auditor signed the lease and the Standard Contract in the summer of 2001, and yet the state budget for Fiscal 2002, which began on July 1, 2001, was not approved into law until December 1, 2001. Thus, at least as of Bradston’s and the City Auditor’s signing, SUF02056 was nothing more than a hope or anticipation rather than a statutorily authorized fact.
The defendants rest heavily on the body of law that echoes in Justice Holmes’s comment that “[m]en must turn square corners when they deal with the Government.” Rock Island, Ark. & La. R.R. v. United States, 254 U.S. 141, 143 (1920). See also Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 524 (1998). They point directly at c. 262, sec. 1 and argue that it dooms to extinction the Standard Contract here because the City Auditor did not certify anything more than $0.00 as availability of appropriation and she did not cite to other statutory authority.
As to the first prong of the statute — nothing more than $0.00 is available by appropriation — this Court struggles to deal with statements by both the Appeals Court, see Rule 1:28 Memorandum at p.6, and the Supreme Judicial Court, that suggest it should read out of c. 262, sec. 1 the words “no such contract shall be deemed to have been made or executed until . . . the auditor . . . has certified that an appropriation is available therefor.” See Reynolds Brothers, Inc. v. Norwood, 414 Mass. 295, 300-01 (1993); Lawrence v. Falzarano, 380 Mass. 18, 24-25 (1980); Lawrence v. Falzarano, 7 Mass.App.Ct. 591, 596-97 (1979).[5] In each of those three cited cases unanimous courts interpreted strikingly similar statutory language found in G.L.c. 44, sec. 31C and found that it only protects contractors with municipalities from losing out because, despite an auditor’s certification, the city or town in fact never appropriated funds for the project. G.L.c. 44, sec. 31C reads in material part as follows: “(N]o contract [with a municipality] . . . shall be deemed to have been made until the auditor . . . has certified thereon that an appropriation in the amount of such contract is available therefor ...”
In Reynolds Brothers, the most recent case, Justice O’Connor, wrote that the “legislative purpose would not be served, but instead would be frustrated, by a decision in this case that the contract in question was invalidated by the absence of a certification.” 414 Mass, at 301.
In 2003, the Supreme Judicial Court restated and reaffirmed long-held principles of statutory construction. In Commonwealth v. Clerk-Magistrate of the West Roxbury Div. of the Dist. Court Dep’t., 439 Mass. 352, 355-56 (2003), the SJC said:
It is a standard canon of statutory construction that “the primary source of insight into the intent of the Legislature is the language of the statute.” International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983). A court may not add words to a statute that the Legislature did not put there. See General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 803 (1999), and cases cited. “Statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result.” Sullivan v. Brookline, 435 Mass. 353, 360 *379 (2001). See O’Brien v. Massachusetts Bay Transp. Auth., 405 Mass. 439, 443-44 (1989). Where, as here, the language of the statute is clear and unambiguous, it is conclusive as to the intent of the Legislature. See Pyle v. School Comn. of So. Hadley, 423 Mass. 283, 285 (1996).
What was said in Clerk-Magistrate of the West Roxbury Div., would seem to suggest that all unambiguous words in a statute should be applied as written and courts interpreting them should neither add nor subtract therefrom. To this Court the words “no such contract shall be deemed to have been made or executed until . . . the auditor . . . has certified that an appropriation is available therefor,” seem plain and unambiguous on their face. However, to be consistent with the Appeals Court’s remand, and to avoid clashing with the words in Reynolds Brothers and Falzarano, this Court will not rule that the City Auditor’s failure to certify anything more than $0.00 as to availability of appropriation compels a ruling that the contract is, therefore, not “deemed to have been made or executed.”
The Court turns instead to the issue of whether the City Auditor “has cited [on the Standard Contract in issue] the statute under authority of which the contract is being executed without an appropriation.” In doing so, the Court is not controlled or guided by any appellate gloss as to the meaning of this language. Nothing like it appears in G.L.c. 44, sec. 31C. Perhaps, then, it is appropriate to apply the test set forth in Clerk-Magistrate of the West Roxbury Div.
Here, the language of the statute seems clear and unambiguous and, therefore, should be conclusive as to the intent of the Legislature. The words used are: “has cited thereon the statute under authority of which the contract is being executed without an appropriation.” In the context used, a “citation” means “a reference to a legal precedent or authority, such as a . . . statute . . . that either substantiates or contradicts a given position.” Black’s Law Dictionary, Second Pocket Edition (2001). A statute, of course, is “a law passed by a legislative body.” Black’s Law Dictionary, Second Pocket Edition (2001).
To this Court, SUF02056 does not appear to be a reference to a law passed by a legislative body. And even if it can be stretched to refer to the Fiscal 2002 state budget, it certainly does not refer to any authority on which the Standard Contract in issue is being executed. At most, it refers to a legislative enactment to appropriate an unallocated aggregate amount of money to the Sheriffs Department to be spent as the Sheriff properly allocates. It has nothing whatsoever to do with the purported ten-year lease agreement between Bradston and the Sheriffs Department.
The Court in Knott v. Inhabitants of the Town of Northbridge, 19 Mass. L. Rep. 255 (Super.Ct. 2005), faced a similar situation. There was a town contract with no auditor’s certification, as the statute required. The Court granted summaiy judgment for the town. In doing so it rejected any reliance on:
the fact that town’s annual budget, approved by the town meeting, approved and thereby appropriated a sum of money to the account of the Department of Public Works through which, arguably, water line construction and repair is funded. However, given the breadth of the appropriation, and that case law appears to support an interpretation that the statute requires certification that an appropriation has been made for a particular contract, in order to “provide central municipal control over irresponsible municipal spending,” see Lawrence v. Falzarano, supra, at 24, the statute cannot be interpreted to allow that the required certification may simply be substituted by a departmental appropriation that has been made to fund general operations for a given year.
Thus, while the Cily Auditor did not certify that an appropriation was available for the Standard Contract with Bradston, which under Reynolds Brothers and Falzarano may not deprive Bradston of its claim to contract rights, surely the fact that Bradston lost no rights because of the lack of certification of appropriation, does not mean any more than that the contract, for that reason alone, shall not be deemed not to have been made or executed.
Here, there being no certification of appropriation, the Cify Auditor then must have followed the alternative route set out in c. 262, sec. 1. She should have, but did not, cite to any statute under authority of which the contract was being executed without an appropriation. In fact, at the time the City Auditor signed the Standard Contract in September of 2001, the State budget for Fiscal 2002, which began in July of 2001, had yet to become law. The budget was enacted at the beginning of December 2001.
Thus, this Court concludes, and rules, that because the City Auditor did not cite on the Standard Contract in issue “the statute under authority of which the contract [was] being executed without appropriation” the Standard Contract “shall be deemed [not] to have been made or executed."
The Court is aware that the Appeals Court determined this Court’s dismissal of the case to be premature, “as it does not appear beyond doubt that the plaintiff can prove no set of facts entitling it to relief.” Rule 1:28 Memorandum at p. 6. When saying that, the Appeals Court had just finished its assessment of this Court’s handling of the issue of terminating the lease and the meaning of the words “signing of this lease.” However, the Appeals Court also made it clear that, in the light of its decision, it did not address the plaintiffs other arguments or the defendant’s argument, “raised for the first time in this appeal,” regarding the effect of the Auditor’s actions under c. 262, sec. 1. Rule 1:28 Memorandum at pp. 6-7. Thus, this Court believes that it is free to do so.
*380 Given the foregoing, and observing that Bradston’s cross motion only seeks a declaratory judgment, there is no need to discuss it further here.

ORDER

For the foregoing reasons, the Defendants’ Motion for Summary Judgment, Paper #28, is ALLOWED and the Plaintiffs Cross Motion for Partial Summary Judgment, Paper #29, is DENIED. An appropriate declaration shall be made on Count VIII to the effect that the Standard Contract and lease never became effective because of the failure to comply with that part of c. 262, sec. 1 of the St. 1998 relating to the citation to an appropriate authorizing statute.

The original defendants included Sheriff Richard J. Rouse, John Haak, and the Sheriffs Department.

See Bradston Associates, LLC v. Andrea Cabral et al, Appeals Court No. 03-P-387, Memorandum and Order Pursuant to Rule 1:28 (the “Rule 1:28 Memorandum”). Because that decision controls this Court’s action on remand it will, of necessity, need to be cited despite cautions against doing so generally on such unpublished decisions.

Sheriff Rouse has since been replaced by Sheriff Cabral.

Inits Rule 1:28 Memorandum, the Appeals Court appears to back-off somewhat from the total elimination of these words as having applicability in the present situation. There, atp. 6, the Appeals Court said: “The statute renders uncertain the meaning of the words ‘signing of this lease’ which trigger the start of the construction period.”