DUSTIN WELCH vs. SUDBURY YOUTH SOCCER ASSOCIATION,
INC., & another.[1]

Middlesex. February 5, 2009. - March 9, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Practice, Civil,* Judgment on the pleadings. *Statute,* Construction. *Corpora-
tion,* Non-profit corporation. *Negligence,* Athletics, Duty to prevent harm,
Duty to warn. *Nuisance. Words,* "Real estate."

In a case in which a minor (plaintiff) was injured by a metal goal post located
on a town field used by nonprofit associations (defendants) conducting a
youth sports program, the trial court judge did not err in granting judgment
on the pleadings in favor of the defendants on the plaintiff's negligence
claim, where the clear and unambiguous language of G. L. c. 231, § 85V,
immunized the defendants from suit, regardless of the plaintiff's status as a
program participant, spectator, or bystander [353-355], and where the
plaintiff's injury was caused not by a deficiency in the care and maintenance
of the field itself (for which immunity was precluded by G. L. c. 231,
§ 85V [iii]), but by the alleged improper placement of easily moveable
sports equipment, an action immunized by the statute [355-357].

CIVIL ACTION commenced in the Superior Court Department on
December 14, 2006.

The case was heard by *Dennis J. Curran,* J., on a motion for
judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Theresa K. Capobianco* for the plaintiff.

*Joseph F. Leighton, Jr.,* for the defendants.

SPINA, J. On April 10, 1998, Dustin Welch, twelve years old,
was a participant in a soccer program run by the Sudbury Youth
Soccer Association, Inc., and the Massachusetts Youth Soccer
Association, Inc. (collectively, the associations), both of which
are duly organized Massachusetts nonprofit corporations. The
youth soccer team on which Welch played held practices and

---

[1]Massachusetts Youth Soccer Association, Inc.

participated in organized matches on Haskell Field in the town of Sudbury. In conjunction with the soccer program, the associations acquired metal goal posts and nets that were used for both practices and organized matches. Welch was injured when a goal post flipped over and struck him on the right leg, causing it to fracture.[2]

On December 14, 2006, Welch commenced a negligence action against the associations, alleging that they owed him a duty to maintain the goal posts in a safe and secure condition while he participated in their soccer program, and to warn him of the danger that existed if the goal posts were not properly anchored to the ground. Welch asserted that the associations committed a breach of these duties by failing to properly secure the goal posts and by failing to warn him of the possible consequent danger to his safety. Further, Welch alleged that as a result of the associations' careless and negligent conduct, he was seriously injured. The associations filed a motion for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), contending that they were entitled to immunity under G. L. c. 231, § 85V, which governs the tort liability of a nonprofit association conducting a sports program.[3] A judge in the Superior Court agreed, and granted judgment on the pleadings for the associations. Welch appealed, and we transferred the case from the Appeals Court on our own motion. For the reasons that follow, we now affirm.

A motion for judgment on the pleadings pursuant to rule 12 (c) is a challenge to the legal sufficiency of a complaint. See *Selectmen of Hanson* v. *Lindsay*, 444 Mass. 502, 509 (2005). "A defendant's rule 12 (c) motion is 'actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.' " *Jarosz* v. *Palmer*, 436 Mass. 526,

---

[2]The record does not indicate precisely what Dustin Welch was doing when he was injured.

[3]General Laws c. 231, § 85V, defines a "[n]onprofit association" as "an entity which is organized as a nonprofit corporation or nonprofit unincorporated association under the laws of the commonwealth or the United States or any entity which is authorized to do business in the commonwealth as a nonprofit corporation or unincorporated association under the laws of the commonwealth." The parties have not challenged the status of the associations as nonprofit corporations.

529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974).[4] In deciding such a motion, all factual allegations pleaded by the nonmoving party must be accepted as true, and contravening assertions by the moving party are to be taken as false. See *Jarosz* v. *Palmer, supra* at 529-530; *Minaya* v. *Massachusetts Credit Union Share Ins. Corp.*, 392 Mass. 904, 905 (1984). "Judgment on the pleadings may be entered if a plaintiff fails to present sufficient facts in the complaint to support the legal claims made." *Flomenbaum* v. *Commonwealth*, 451 Mass. 740, 742 (2008).

The present case is simply one of statutory construction and application. General Laws c. 231, § 85V, provides, in relevant part: "[N]o nonprofit association conducting a sports or a sailing program . . . shall be liable to any person for any action in tort as a result of any acts or failures to act . . . in conducting such sports program."[5] However, this immunity is not absolute. Nonprofit associations conducting sports programs are subject to liability for, among other things, "acts or failures to act relating to the care and maintenance of real estate which such . . . nonprofit associations own, possess or control and which is used in connection with a sports program and or any other nonprofit association activity." G. L. c. 231, § 85V (iii).

It is a canon of statutory construction that "statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve

---

[4]Analysis of the adequacy of a complaint for purposes of a motion under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), is now governed by *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008).

[5]General Laws c. 231, § 85V, defines a "[s]ports program" as "baseball, softball, football, basketball, soccer and any other competitive sport formally recognized as a sport by the United States Olympic Committee as specified by and under the jurisdiction of the Amateur Sports Act of 1978 Public Law 95-606, [36 U.S.C. §§ 371 et seq.,] the Amateur Athletic Union or the National Collegiate Athletic Association. It shall be limited to a program or that portion of a program that is organized for recreational purposes and whose activities are substantially for such purposes and which is primarily for participants who are eighteen years of age or younger whose nineteenth birthday occurs during the year of participation or the competitive season, whichever is longer; provided, however, that there shall be no age limitation for programs operated for the physically handicapped or mentally retarded." The parties have not challenged the fact that the associations were conducting a "sports program" within the meaning of this statutory definition.

an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). See *O'Brien* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 439, 443-444 (1989). Words are to be accorded their ordinary meaning and approved usage. See *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 286 (1996). Where, as here, the language of a statute is clear and unambiguous, it is conclusive as to the intent of the Legislature. See *id.* at 285. The plain and unambiguous language of G. L. c. 231, § 85V, reveals a legislative intent to limit the tort liability of a nonprofit association with respect to its conduct in running a sports program. Cf. *Sharon* v. *Newton*, 437 Mass. 99, 110 (2002) (Legislature has "made the judgment that the elimination of liability for negligence in nonprofit sports programs is necessary to the encouragement and survival of such programs").

As an initial matter, Welch contends that the provisions of § 85V are not applicable to his negligence action because he was neither a participant nor a spectator in an organized game or practice at the time he was injured. We disagree.

The applicability of § 85V is not based on the particular status of the individual who is injured, whether that person be a sports program participant, a spectator, or a bystander. The statute provides that "no nonprofit association conducting a sports . . . program . . . shall be liable to *any person* for any action in tort as a result of any acts or failures to act in . . . conducting such sports program" (emphasis added). G. L. c. 231, § 85V. The use of the words "any person" demonstrates that the focus of this statutory language is not on the status of the party bringing the tort action. Rather, the relevant consideration is whether that party was injured by any act or failure to act by a nonprofit association while conducting a sports program. Section 85V confers immunity on a nonprofit association in such circumstances, subject to certain exceptions, one of which we now consider.

Welch contends that the real estate exception set forth in G. L. c. 231, § 85V (iii), precludes the associations from enjoying immunity from liability for his injuries. He argues that the associations were negligent in their care and maintenance of Haskell Field by allowing a dangerous condition — improperly secured soccer goals — to exist on the property. Further, Welch continues, this dangerous condition created a public nuisance,

which, in turn, caused him to suffer serious harm. In Welch's view, the establishment and maintenance of this nuisance subjected the associations to liability for his injuries, and the immunity provisions of § 85V did not protect them from such liability. We disagree.

Contrary to Welch's argument, the present case is not analogous to those where we have concluded that, under the common law, a landowner generally owes a duty of reasonable care to prevent activities or conditions on his land that would create a public nuisance, such as the release of hazardous waste onto the property, and can be held liable for the consequences of his failure to abate the nuisance. See, e.g., *Nassr* v. *Commonwealth*, 394 Mass. 767, 774-776 (1985), and cases cited. Cf. *Sullivan* v. *Brookline*, 416 Mass. 825, 827 (1994) ("The duty owed by a property owner to someone lawfully on the owner's premises is one of reasonable care in the circumstances"); *Aylward* v. *McCloskey*, 412 Mass. 77, 80 n.3 (1992) (liability may arise when negligence of property owner or occupier permits unnatural and dangerous condition to occur either by itself or in connection with some other defect on property); Restatement (Second) of Torts § 343 (1965) (liability of possessor of land to invitees for dangerous condition on land).

By enacting G. L. c. 231, § 85V, the Legislature has determined that nonprofit associations conducting sports programs for youths are to be treated differently from ordinary landowners. As is pertinent here, liability can be imposed on the associations for "acts or failures to act relating to *the care and maintenance of real estate* which such . . . nonprofit associations own, possess or control and which is used in connection with a sports program and or any other nonprofit association activity" (emphasis added). G. L. c. 231, § 85V (iii). Section 85V does not define what constitutes "real estate" for purposes of the imposition of liability. However, G. L. c. 4, § 7, Seventeenth, provides that, with respect to general statutory construction, the term "real estate" shall include "lands, tenements and hereditaments, and all rights thereto and interests therein." See *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 218 (1982) (real property comprises both land and buildings). According to Black's Law Dictionary 1263 (6th ed. 1990), "real estate" is defined as "[l]and and anything permanently affixed to

the land, such as buildings, fences, and those things attached to the buildings, such as light fixtures, plumbing and heating fixtures, or other such items which would be personal property if not attached." Simply put, the soccer goals used by the associations in conducting their sports program are not "real estate."

In his complaint, Welch stated that "[t]he reasonable and/or proper use of said goal posts and nets required that ground anchor pegs or other ground stakes be used to anchor or otherwise secure the goal's metal posts to the ground." This suggests that goal posts were easily moveable and, thus, were not permanently affixed to Haskell Field so as to be considered a part of the real estate. See *Worcester Redevelopment Auth.* v. *Department of Hous. & Community Dev.*, 47 Mass. App. Ct. 525, 529 (1999) (fixture understood to be permanent improvement to real estate); Black's Law Dictionary, *supra* at 638 ("fixture" defined as "[a]n article in the nature of personal property which has been so annexed to the realty that it is regarded as a part of the real property. . . . That which is fixed or attached to something permanently as an appendage, and not removable").

The harm alleged by Welch did not result from a deficiency in the care and maintenance of Haskell Field itself. Rather, Welch was injured by the alleged improper placement of sports equipment atop the real estate. When setting up the soccer goals, the associations were acting in furtherance of a sports program. Their alleged failure to securely anchor the goal posts would be considered a "failure[] to act . . . in conducting such sports program," G. L. c. 231, § 85V, and such ordinary negligence falls squarely within the broad immunity conferred on a nonprofit association by § 85V. Judgment on the pleadings in favor of the associations was warranted.

*Judgment affirmed.*