FEDERAL NATIONAL MORTGAGE ASSOCIATION *vs.* JOSE NUNEZ.[1]

Hampden. May 2, 2011. - September 6, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Summary Process. Statute,* Retroactive application, Retrospective statute, Construction. *Words,* "Action," "Eviction."

Discussion of provisions and legislative history of G. L. c. 186A, protecting tenants in foreclosed residential properties from eviction without just cause by institutional lenders and certain financial institutions. [513-515]

A Housing Court judge properly dismissed a summary process action brought by the plaintiff financial institution seeking to evict the defendant residential property tenant without cause, where the enactment of G. L. c. 186A, with an immediate effective date, barred, without improper retroactive effect, any further acts by the plaintiff intended to bring about the defendant's vacation of the property, in that the use of the word "eviction" in the statute was not limited to the service of a notice to quit or initiation of a summary process action but, rather, included any act that resulted in the actual or constructive eviction of a tenant [516-521]; and in that there was no manifestation by the Legislature, in unequivocal terms, that the statute applied to properties foreclosed on prior to the effective date, nor was the statute's practical consequence, i.e., a modest reduction in the value of a real estate asset arising from a limitation on the plaintiff's ability to evict a tenant, so unfair as to render it retroactive in effect [521-524].

SUMMARY PROCESS. Complaint filed in the Western Division of the Housing Court Department on May 10, 2010.

A motion to dismiss was heard by *Dina E. Fein,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Scott L. Kafker,* J., in the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

---

[1]The complaint listed the names of two additional defendants, "and/or current occupants." However, only Jose Nunez answered the complaint and moved to dismiss the claim for possession. Mail to the two other named defendants was returned to sender throughout the pendency of the summary process case, and it appears from the limited record before us that they did not reside on the property during the relevant period or did not challenge the eviction.

*Thomas I. Elkind (Michael Thompson* with him) for the plaintiff.

*Suzanne Garrow (Thomas P. Zito* with her) for the defendant.

*David Grossman, Charlotte Alvarez, Elizabeth Benton, Ayalon Eliach, Caitlin Kekacs, Samuel Levine, Marielle Macher, Adrianna Rodriguez, Samuel Simon, & David Williams,* for City Life/Vida Urbana, amicus curiae, submitted a brief.

*Judith Liben,* for Massachusetts Law Reform Institute, amicus curiae, submitted a brief.

GANTS, J. On August 7, 2010, the Legislature enacted and made immediately effective St. 2010, c. 258 (act), which prohibits institutional lenders and certain financial institutions who own foreclosed properties from evicting residential tenants without just cause. The issue raised in this case is whether the act requires dismissal of a no-cause summary process case that was already pending when the act went into effect, or whether the application of the act to such a case is impermissibly retroactive. We conclude that the provision of the act that prevents eviction without just cause is properly applied to protect all residential tenants on foreclosed properties who, on or after August 7, 2010, had yet to vacate or be removed from the premises by an eviction, even where the owner purchased the property before the act's effective date and initiated a summary process action before that date. Because the tenant, Jose Nunez, was still residing on the property on August 7, 2010, and the owner, the Federal National Mortgage Association (Fannie Mae), was seeking to evict him without just cause, we conclude that the Housing Court judge properly applied the act to dismiss Fannie Mae's pending claim for possession.[2]

*Factual background.* Fannie Mae became the owner of the property located at 16-18 Hampden Street, unit 18, in the Indian Orchard section of Springfield at a foreclosure sale on November 30, 2009. On January 11, 2010, Fannie Mae served the tenants in the property with a ninety-day notice to quit, as required by the Federal Protecting Tenants at Foreclosure Act, Pub. L. 111-22, §§ 701-704, 123 Stat. 1660 (2009). The notice did not state any cause for termination of the tenancy, and Fannie Mae has

---

[2]We acknowledge the amicus briefs submitted by the Massachusetts Law Reform Institute and by City Life/Vida Urbana.

conceded that it did not have just cause for the eviction. When Nunez did not leave after the ninety-day period, Fannie Mae served and filed a summary process complaint on May 10, 2010, seeking to obtain possession of the premises. Nunez timely filed an answer asserting various defenses and counterclaims, none of which is relevant to the issue raised on appeal.

On September 22, 2010, Nunez filed a motion to dismiss Fannie Mae's claim for possession on the grounds that, under the newly-enacted St. 2010, c. 258, Fannie Mae could no longer evict Nunez without just cause. A judge in the Housing Court agreed and dismissed Fannie Mae's claim for possession, while transferring other claims and counterclaims to the civil docket. Fannie Mae petitioned for an interlocutory appeal to a single justice of the Appeals Court, who referred the case to a full panel of that court. We transferred the case to this court on our own motion.

*Statutory background.* Section 6 of the act added a new chapter to the General Laws, G. L. c. 186A, entitled, "Tenant Protections in Foreclosed Properties." General Laws c. 186A, § 2, provides: "Notwithstanding any general or special law to the contrary, a foreclosing owner shall not evict a tenant except for just cause or unless a binding purchase and sale agreement has been executed for a bona fide third party to purchase the housing accommodation from a foreclosing owner." The statute defines an "[e]viction" as "an action, without limitation, by a foreclosing owner of a housing accommodation which is intended to actually or constructively evict a tenant or otherwise compel a tenant to vacate such housing accommodation." G. L. c. 186A, § 1.

A "[f]oreclosing owner" covered by the act is an entity that held the mortgage prior to foreclosure, or a financial institution that acquired the property after a foreclosure. G. L. c. 186A, § 1.[3] A "[t]enant" is "a person or group of persons who at the time of foreclosure is entitled to occupy a housing accommoda-

---

[3]More specifically, a "[f]oreclosing owner" is defined as:

"[A]n entity that holds title in any capacity, directly or indirectly, without limitation, whether in its own name, as trustee or as beneficiary, to a housing accommodation that has been foreclosed upon and either: (1) held or owned a mortgage or other security interest in the housing

tion pursuant to a bona fide lease or tenancy or a tenancy at will." *Id.*[4] The "[j]ust cause" that permits a foreclosing owner to evict a tenant includes nonpayment of rent; refusal to renew or extend a written lease that has expired; nuisance, damage or interference with quiet enjoyment caused by the tenant; the tenant's use of the property for illegal purposes; or the tenant's failure to permit reasonable access to the property for necessary repairs or improvements. *Id.*

The statute provides a fine of not less than $5,000 for "[a] foreclosing owner that evicts a tenant in violation of this chapter," and specifies that "[e]ach such illegal eviction shall constitute a separate offense." G. L. c. 186A, § 6. It is also a defense to an "eviction proceeding" that "the foreclosing owner attempted to evict a tenant in violation of this chapter." *Id.*

Apart from the provisions prohibiting eviction without just cause, c. 186A seeks to ensure that tenants in foreclosed residential properties be informed of the name, address, and telephone number of the foreclosing owner and the building manager, and the address to which rent should be sent, no later than thirty days after the foreclosure. G. L. c. 186A, § 3. This notice must be provided in three ways: by posting in a prominent location in the building, by first class mail to each unit, and by sliding the information under the door of each unit. *Id.* A foreclosing owner

accommodation at any point prior to the foreclosure of the housing accommodation or is the subsidiary, parent, trustee, or agent thereof; or (2) is an institutional mortgagee that acquires or holds title to the housing accommodation within 3 years of the filing of a foreclosure deed on the housing accommodation; or (3) is the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation."

G. L. c. 186A, § 1. An "[e]ntity" is defined as "a business organization, or any other kind of organization including, without limitation, a corporation, partnership, trust, limited liability corporation, limited liability partnership, joint venture, sole proprietorship or any other category of organization and any employee, agent, servant or other representative of such entity." *Id.* An "[i]nstitutional mortgagee" is defined as "an entity or an entity which is the subsidiary, parent, trustee or agent thereof or otherwise related to such entity, that holds or owns mortgages or other security interests in 3 or more housing accommodations or that acts as a mortgage servicer of 3 or more mortgages of housing accommodations." *Id.*

[4]A "[b]ona fide lease or bona fide tenancy" requires that the tenant not be the mortgagor or an immediate relative of the mortgagor, and that the lease or tenancy result from an arm's-length transaction. G. L. c. 186A, § 1.

"shall not evict a tenant" for just cause until the notice required by G. L. c. 186A, § 3, is posted and delivered, or until thirty days after the posting and delivery of the notice, depending on the nature of the action that constitutes just cause. G. L. c. 186A, § 4 (a), (b).[5]

The act included an emergency preamble that made it effective immediately on its enactment on August 7, 2010, rather than ninety days later as ordinarily required by art. 48 of the Amendments to the Massachusetts Constitution. This preamble declared the act an "emergency law" and provided that the "deferred operation of this act would tend to defeat its purpose, which is to protect forthwith the citizens and neighborhoods of the commonwealth." St. 2010, c. 258, Preamble.

The legislative history of the act demonstrates that the Legislature, in promulgating the act, including c. 186A, was attempting to address the problem that large numbers of residential tenants were being evicted and left homeless by institutional lenders and other entities that purchased foreclosed houses and apartment buildings. Legislators appeared to be concerned that empty, foreclosed homes and apartments were scarring neighborhoods and lowering property values, that large numbers of former tenants were now homeless, and that the increase in the homeless population was placing a greater burden on already strained State and local finances.[6]

---

[5]In addition, "[a] foreclosing owner shall not evict a tenant for actions that constitute just cause unless the foreclosing owner has delivered to each tenant at the time of delivery of written notice pursuant to this section, a written disclosure of the tenant's right to a court hearing prior to eviction." G. L. c. 186A, § 3.

[6]Representative Kevin Honan, House chair of the Joint Committee on Housing, said:

> "Foreclosure is an issue that not only affects families, but it affects entire communities. When you have vacant homes on streets it adversely impacts the property value of all the homes on the street and there's also the capacity for crime in these homes, and that's additional costs and burdens on the local municipalities."

Senate Bill to Stabilize Neighborhoods, House Floor Debate, July 27, 2010 (statement of Rep. Honan). Senator Susan Tucker, the sponsor of the bill in the Senate, said in her statement:

> "Three years ago when this body took its first action on foreclosure, I think we were all hoping that by 2010, the situation would look much

*Discussion.* Fannie Mae argues that because it had already purchased the subject property at the foreclosure sale, served a notice to quit, waited for the statutory period to run, and filed a summary process complaint before c. 186A went into effect, the judge improperly gave retroactive effect to c. 186A when she concluded that the newly enacted statute barred Fannie Mae from evicting Nunez without just cause.

"Whether a statutory enactment applies prospectively or retrospectively is a question of legislative intent." *Fleet Nat'l Bank* v. *Commissioner of Revenue*, 448 Mass. 441, 448 (2007). We have applied general rules of thumb in determining whether the Legislature intended prospective or retroactive application of a statute:

> "As a general matter, 'all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations. Doubtless all legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms.' "

*Id.* at 448-449, quoting *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). See *Fernandez-Vargas* v. *Gonzales*, 548 U.S. 30, 37 (2006); *Rosnov* v. *Molloy*, *ante* 474, 477 (2011).[7] Thus, where the language of a statute and the ordinary tools of statutory interpretation do not resolve the

---

better in the Commonwealth than it does regarding foreclosure. The situation now is that foreclosures are spreading out into our suburban communities due to job losses and due to people who . . . over-financed their homes. And throughout these three years, we've learned quite a bit about the issue of foreclosure and where some of the problems are. And one of the huge problems is the fact that renters, tenants in some of these homes are being evicted for no good cause. They're good tenants. They pay their rent on time. They are ending up in our homeless shelters. . . . This bill gives protection to tenants to be able to stay . . . in the home until it is sold. This is a win for everybody."

An Act to Stabilize Neighborhoods, Senate Floor Debate, April 29, 2010 (statement of Sen. Tucker).

[7] A statute that is intended to apply retroactively may be subject to challenge

statute's application to cases that are pending or to preenact-ment conduct or transactions, "we ask whether applying the statute to the person objecting would have a retroactive con-sequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment' " and, if so, apply the presumption that such a retroactive effect was not intended by the Legislature. *Fernandez-Vargas* v. *Gonzales, supra* at 37-38, quoting *Landgraf* v. *USI Film Prods.,* 511 U.S. 244, 278 (1994).

Fannie Mae presents two separate arguments that the judge applied the act retroactively without any plain legislative intent to permit such retroactive effect. First, Fannie Mae argues that, based on the definition of "eviction" in G. L. c. 186A, § 1, the "eviction" covered by the statute began when the summary process complaint was filed, and the judge's dismissal of its claim for possession effectively made unlawful an action — the filing of the summary process complaint — that was lawful when taken. Second, Fannie Mae argues that the application of the statute is retroactive because it burdens substantive rights, specifi-cally the property rights it acquired before the effective date of the act when it became the owner of a home following the fore-closure, which included the right to take possession of the property from a tenant without cause, after complying with required notice procedures.

Fannie Mae's first claim of retroactivity is premised on the argument that the statutory definition of "eviction" is limited to a legal action to cause a tenant to vacate a property. Asserting that the legal action that the statute prohibits was the one initiated

on constitutional grounds. See *Canton* v. *Bruno,* 361 Mass. 598, 606 (1972) ("If it appears by necessary implication from the words, context or objects of a particular enactment that the Legislature intended it to be retroactive in operation, this court will give effect to the intent of the Legislature in so far as the State and Federal Constitutions permit"). For example, a retroactive statute runs afoul of the ex post facto clause if it is punitive, and violates due process rights if, although not punitive, it does not pass a test of reason-ableness that asks "whether it is equitable to apply the retroactive statute" in a given case. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 191 (1978). See *Doe, Sex Offender Registry Bd. No. 8725* v. *Sex Offender Registry Bd.,* 450 Mass. 780, 788 (2008); *Commonwealth* v. *Bruno,* 432 Mass. 489, 498-500 (2000). The Federal National Mortgage Association (Fannie Mae) does not argue that the application of G. L. c. 186A, § 2, to prevent a no-cause eviction in this case raises any constitutional question.

when the summary process complaint was filed, Fannie Mae claims that the only way the Housing Court could have applied the act to this case was by retroactively prohibiting a legal action that had already commenced.[8]

We disagree with the premise that an "eviction" refers only to a legal action. Under G. L. c. 186A, § 1, an "eviction" includes, "without limitation," any "action" "intended to actually or constructively evict a tenant or otherwise compel a tenant to vacate." While a legal action is needed to "actually" evict a tenant, it is not necessary to "constructively" evict a tenant, which can be accomplished by cutting off a unit's heat, water, or electricity. Therefore, it is clear that the Legislature did not limit an "action" in c. 186A to a legal action. We also note that the word "action" is found elsewhere in c. 186A where, in context, it plainly refers generally to acts or conduct rather than legal actions. General Laws c. 186A, § 3, provides that "[a] foreclosing owner shall not evict a tenant for *actions* that constitute just cause" (emphasis added) unless the owner has provided the tenant with a written disclosure of the tenant's right to a court hearing before eviction. General Laws c. 186A, § 4 (*a*), provides that "[a] foreclosing owner shall not evict a tenant for the following *actions* that constitute just cause until 30 days after the notice required by section 3 is posted and delivered" (emphasis added), and then identifies three such actions: failure to pay rent, material violation of an obligation of the tenancy, and refusal to execute a written renewal or extension of a lease.

We interpret the word "action" in the definition of "[e]vic-

---

[8]Fannie Mae also argues that the notice to quit transformed Nunez's tenancy from a tenancy at will into a tenancy at sufferance, see *Hodge* v. *Klug*, 33 Mass. App. Ct. 746, 753 (1992), and that a tenant at sufferance is not a "tenant" as defined in G. L. c. 186A, § 1. Therefore, according to Fannie Mae, the Housing Court's application of the statute to this case was retroactive because, in order to apply the statute, the court necessarily reached back and transformed Nunez's tenancy into a tenancy at will to which the statute was applicable. This argument fails because a "tenant" under G. L. c. 186A, § 1, is defined as "a person or group of persons who *at the time of foreclosure* is entitled to occupy a housing accommodation pursuant to a bona fide lease or tenancy or a tenancy at will" (emphasis added). Because the determination whether a person is a "tenant" under the act looks to the "time of foreclosure," and because there is no dispute that Nunez was a "[t]enant" as defined under G. L. c. 186A, § 1, "at the time of foreclosure," his subsequent receipt of a notice to quit could not remove him from the protection of the act.

tion" in G. L. c. 186A, § 1, to mean any act or conduct, not necessarily a legal action, and we understand the phrase "without limitation" to mean the broadest reasonable definition of acts, without exception. See *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285-286 (1996) ("without limitation" leaves no room to construe exceptions other than as listed in the statute). The word "eviction," as used in the statute, is therefore not limited to the service of a notice to quit or initiation of a summary process action: it includes any act that results in the actual or constructive eviction of a tenant, and any intermediate act that is "intended to actually or constructively evict a tenant or otherwise compel a tenant to vacate such housing accommodation." G. L. c. 186A, § 1. Where the eviction is constructive, the "action" may be the conduct that renders the housing unit uninhabitable, such as the denial of heat in winter. Where the eviction is "actual," that is, arises from a summary process action, the "action" may be the foreclosing owner's efforts to prosecute the eviction at any of the various stages in a summary process eviction: termination of the tenancy by service of an effective notice to quit, filing of a summary process complaint, entry of judgment on behalf of the plaintiff in the summary process action, the issuance of an execution on expiration of the statutory appeal period, service of a forty-eight hour notice, and, finally, levy on the execution to recover physical possession of the residence, effectuating the eviction.[9]

Under our interpretation of G. L. c. 186A, §§ 1-2, the prohibition against evictions without cause in G. L. c. 186A, § 2, is prospective in that it does not apply to acts of eviction committed by a foreclosing owner before August 7, 2010, but does apply to acts of eviction committed after that effective date.[10] See *Rosnov* v. *Molloy*, *supra* at 475 (Wage Act amendment "should be read to apply only prospectively, to claims arising

---

[9]We do not address whether separate "actions" in the eviction process may constitute separate violations of G. L. c. 186A, § 6, which makes an eviction in violation of G. L. c. 186A punishable by a fine of not less than $5,000, or whether all actions in the same eviction process would be deemed a single violation.

[10]As a result, the fine of not less than $5,000 that G. L. c. 186A, § 6, imposes on foreclosing owners that evict tenants in violation of c. 186A applies only to acts of eviction by foreclosing owners committed after the effective date of the act; a foreclosing owner may not be fined for acts committed before the effective date of the act that are later declared illegal under the act.

on or after the amendment's effective date"). Where a "no-fault" eviction process began but was not completed before August 7, 2010, a foreclosing owner cannot complete the eviction, because any further act intended to cause the tenant to vacate would violate c. 186A.[11] Because Fannie Mae, by continuing to prosecute the summary process action, was seeking further acts of eviction against Nunez after the statute's effective date without any claim of just cause, the judge was correct in dismissing the claim for possession.[12]

This conclusion is consistent with *Thorpe* v. *Housing Auth. of Durham*, 393 U.S. 268, 271-272, 281-283 (1969), where the Supreme Court held that a Department of Housing and Urban Development circular requiring that a tenant who is told to vacate a housing unit be given notice of the reasons and an opportunity to reply was applicable to a tenant who, at the time the directive was issued, had received notice of termination of her tenancy but had not vacated the premises. The Court subsequently noted that, "because the tenant had 'not yet vacated,' we saw no significance in the fact that the housing authority

[11]A foreclosing owner that has just cause to evict but has not alleged just cause in the notice to quit and the summary process action needs to recommence the summary process procedure and issue a new notice to quit asserting just cause and, if the tenant does not vacate, file a new summary process complaint. See *Strycharski* v. *Spillane*, 320 Mass. 382, 384-385 (1946) (landlord "confined to the ground assigned" in notice to quit).

[12]Fannie Mae contends that, if the act is interpreted to apply to Nunez's tenancy, it could never evict Nunez, even if it had just cause, because it must provide tenants with the notice required in G. L. c. 186A, § 3, within thirty days of the foreclosure, and may not evict for just cause unless "the notice required by section 3 is posted and delivered." G. L. c. 186A, § 4 (*a*), (*b*). According to Fannie Mae, where, as here, the foreclosure occurred before the enactment of the act and therefore the notice required by the act was not posted and delivered within thirty days of the foreclosure, it could never satisfy this prerequisite for eviction and therefore could never lawfully evict under the act. Nothing in the language of the act requires so illogical a result. See *DiFiore* v. *American Airlines, Inc.*, 454 Mass. 486, 490-491 (2009) ("our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation"). For an eviction to satisfy the requirements of § 4, the act merely requires the foreclosing owner to have posted and delivered the notice prescribed in G. L. c. 186A, § 3, before serving a notice to quit; the requirement that the posting and delivery take place within thirty days of the foreclosure, where applicable, is separate and distinct from the requirements of a lawful foreclosure under the act.

had 'decided to evict her before the circular was issued.' " *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 276 (1994), quoting *Thorpe* v. *Housing Auth. of Durham, supra* at 283.

We turn now to Fannie Mae's second retroactivity argument, that applying c. 186A to a home that was foreclosed before the effective date of the act is retroactive because it impairs the property rights that Fannie Mae had when it purchased the home. Having acquired ownership of the property and, with it, the ability to evict Nunez without cause, Fannie Mae argues that the application of the subsequently enacted c. 186A is retroactive because it alters and diminishes the property rights that it had acquired at the foreclosure sale. And because a statute may be interpreted to have retroactive effect only where the Legislature in unequivocal terms manifests its intent to apply the statute retroactively, and the Legislature did not manifest such intent in enacting c. 186A, Fannie Mae contends that the statute may apply only prospectively to properties foreclosed after the effective date.

Turning first to legislative intent, we agree that the Legislature did not in unequivocal terms manifest its intent that c. 186A apply to foreclosing owners that had already purchased property at a foreclosure sale. While it is plain that the Legislature wished the new statute to take effect immediately to protect tenants in foreclosed properties from eviction, neither the emergency preamble nor the statutory text demonstrates a clear intent to apply the statute to properties already foreclosed on. See *Lindh* v. *Murphy*, 521 U.S. 320, 328 n.4 (1997) ("cases where this Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation"); *Landgraf* v. *USI Film Prods., supra* at 285-286 (that "retroactive application of a new statute would vindicate its purpose more fully . . . is not sufficient to rebut the presumption against retroactivity").

Because the Legislature did not make clear in unequivocal terms that the statute applies to properties foreclosed on before the effective date, we must determine whether such an application of the statute would be retroactive in effect. See *Fernandez-Vargas* v. *Gonzales*, 548 U.S. 30, 37 (2006). "[D]eciding when a statute operates 'retroactively' is not always a simple or mechani-

cal task." *Landgraf* v. *USI Film Prods.*, *supra* at 268. While the Supreme Court has broadly stated that a retroactive law is one that "attaches new legal consequences to events completed before its enactment," it has also acknowledged that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." *Id.* at 269-270. "Even uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment . . . ." *Id.* at 269 n.24. "If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever." *Id.*, quoting L. Fuller, The Morality of Law 60 (1964).

Central to the inquiry whether the application of a statute operates retroactively is the concern for "fair notice, reasonable reliance, and settled expectations" that underlies the presumption against retroactive legislation. *Landgraf* v. *USI Film Prods.*, *supra* at 270. See *id.* at 265-267. A conclusion about retroactivity thus "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270. See *Immigration & Naturalization Serv.* v. *St. Cyr*, 533 U.S. 289, 325 (2001) (repeal of provision providing relief from deportation had "obvious and severe retroactive effect" as applied to aliens who agreed to guilty pleas that would have preserved their eligibility for such relief, because of strong likelihood that aliens who waived right to jury trial were acting to retain eligibility for immigration relief). Here, where the Legislature has limited the power of certain property owners to remove tenants without cause, we decide whether applying the statute to properties purchased before the statute's enactment would be so unfair, considering "fair notice, reasonable reliance, and settled expectations," that we should conclude, in the absence of unequivocal statutory language, the Legislature would not have intended such unfairness. Because c. 186A is

limited to "foreclosing owners," we conclude that there is no such unfairness here, and that c. 186A is not retroactive in effect.

A "[f]oreclosing owner" under G. L. c. 186A, § 1, is defined narrowly: it does not include individuals, and instead is limited to Fannie Mae and the Federal Home Loan Mortgage Corporation and other entities that either held the mortgage prior to foreclosure or are members of the mortgage industry and acquired the property after foreclosure. By definition, a "foreclosing owner" does not own a home to live in it; it owns a home as an asset to be sold, and perhaps rented until it can be sold. Thus, the practical consequence of c. 186A to a foreclosing owner is not the denial of an opportunity to reside in property it owns, but the reduction, if any, in the fair market value of the property arising from the limitation on eviction. See Selling Tenanted Properties, New York Times, April 13, 1997. Because the foreclosing owner may evict without cause once a purchase and sale agreement is executed for the sale of the housing unit to a bona fide third party, see G. L. c. 186A, § 2, the statute's impact on fair market value will be modest because the only practical consequence of the statute on the new buyer is the uncertainty whether the seller will succeed in evicting the tenant before the scheduled closing, for which the buyer may demand a discount in the sales price.[13] We conclude that a modest reduction in the value of a real estate asset arising from the limitation on Fannie Mae's ability to evict tenants is not the sort of burden that is so unfair as to render c. 186A retroactive in effect. Rather, like a

[13]For a buyer who wishes to continue to rent the property, c. 186A may enhance the value of the property because it bars a foreclosing owner from evicting only where a tenant pays rent; does not commit a nuisance, use the property for illegal purposes, or materially violate the obligations of the tenancy; permits reasonable access to the unit for repairs or improvements; and does not refuse to renew or extend a lease. See G. L. c. 186A, §§ 1-2. Such a buyer may be eager to continue to rent to such a good tenant after purchase of the property and may not wish the tenant evicted before the sale. See Big Money Gets Into Landlord Game, Wall St. J., August 4, 2011 (reporting increasing interest of large investors in purchase of foreclosed homes for use as rental properties, with plans to sell when housing prices rise). Moreover, the Federal government is reportedly contemplating ways to increase the rental of properties owned by Fannie Mae, because rental units generate more income than housing sales in a weak housing market. See Government Considers Ways to Rent Foreclosed Homes, Wall St. J., July 22, 2011.

new property tax, zoning regulation, or other "uncontroversially prospective statutes," c. 186A, at worst, simply "may upset the reasonable expectations that prompted those affected to acquire property." See *Landgraf* v. *USI Film Prods.*, *supra* at 269 n.24.

*Conclusion.* We conclude that the prohibition against evictions without just cause or an executed purchase and sale agreement prescribed in G. L. c. 186A, § 2, operates prospectively and prevents acts of eviction committed by a foreclosing owner after August 7, 2010. Because Nunez had yet to vacate or be removed from his home before that date, and because Fannie Mae sought to remove him after that date without just cause, we affirm the Housing Court judge's dismissal of the summary process complaint.

*So ordered.*