GANTS, C.J.
**831 *302 The petitioners in this case raise numerous concerns regarding summary process proceedings in the Worcester Division of the Housing Court Department, now part of the Central Division (Housing Court).[4] See St. 2017, c. 47, § 78. Although we affirm the single justice's order denying the petitioners' request for relief under G. L. c. 211, § 3, we take this opportunity to clarify several important issues raised by the facts alleged in this case: (1) the appropriate process for waiving court fees and costs based on indigency; (2) more narrowly, the process for waiving the cost of audio recordings of prior court proceedings for those found indigent; and (3) the obligation of Massachusetts courts to provide reasonable accommodations for parties with disabilities. In providing this guidance, we recognize that the complexity and speed of summary process cases can present formidable challenges to individuals facing eviction, particularly where those individuals are not represented by an attorney.[5]
Background. Each petitioner in this case is or was involved in a summary process eviction action commenced in the Housing **832 Court. Although the alleged experiences of these petitioners vary widely, each claims that he or she was improperly denied a fee waiver for audio recordings of his or her trial court proceedings, was unable to access audio recordings in time to prepare for a Housing Court or appellate court proceeding, or was required to reveal his or her indigency in open court while requesting audio recordings. The petitioners who were denied access to audio recordings argue that they were unable to learn what had happened at court hearings they were unable to attend or fully understand, and that they were therefore unable to adequately protect themselves from adverse legal action. Several petitioners further claim that the Housing Court denied them reasonable accommodations for their disabilities, thereby depriving them of equal access to the courts.
On or about February 28, 2017, the petitioners in this case applied for relief pursuant to G. L. c. 211, § 3, in the county court. They argued in their petition that this court should exercise its superintendence power to (1) require that all requested audio recordings be provided to all indigent parties or, in the alternative, that recordings be provided without hearing in certain limited circumstances; (2) bar courts from following procedures that require parties publicly to reveal their indigency; (3) halt eviction executions for all indigent individuals pending thorough review of the Housing Court's denial of requests for audio recordings; (4) rewind petitioners' cases back to the point at which they were denied access to an audio recording; (5) order all courts hearing summary process actions visibly to display at least one poster explaining the rights of indigent litigants; (6) send an explanatory memorandum to judges and clerk-magistrates *303 regarding the proper treatment of indigent litigants; and (7) reimburse indigent petitioners who paid for their audio recordings, or had others pay for them on their behalf. The petition further stated that the Housing Court repeatedly failed to provide reasonable accommodations for petitioners with disabilities.
The Attorney General filed a motion to dismiss the petition on behalf of the Housing Court, arguing that the relief sought by the petitioners was available through the normal appellate process and that the petition failed to comply with a court rule requiring petitions filed pursuant to G. L. c. 211, § 3, to "name as respondents and make service upon all parties to the proceeding before the lower court." S.J.C. Rule 2:22, 422 Mass. 1302 (1996). The petitioners filed an opposition to the Attorney General's motion.
**833 On June 30, 2017, the single justice allowed the Attorney General's motion to dismiss the petition and ordered that the petition be denied without hearing. Having granted the motion to dismiss, the single justice made no findings of fact. The petitioners moved for reconsideration, and this motion was likewise denied without hearing. The petitioners filed a notice of appeal seeking review of the single justice's dismissal of their petition and denial of their motion for reconsideration, and the appeal was entered in this court.
Discussion. "Decisions of a single justice will not be disturbed on appeal absent clear error of law or abuse of discretion." Fogarty v. Commonwealth, 406 Mass. 103, 106, 546 N.E.2d 354 (1989). "Parties seeking relief pursuant to G. L. c. 211, § 3, must demonstrate both a violation of their substantive rights and the absence of another adequate or effective avenue of relief" (quotations and citation omitted). McDonough, petitioner, 457 Mass. 512, 517-518, 930 N.E.2d 1279 (2010). Because the petitioners had adequate alternative avenues to seek review of their claims, we conclude that the single justice did not abuse his discretion or commit clear error of law in denying the petitioners' G. L. c. 211, § 3, petition.[6] In light of the facts alleged in this case, however, we think it important to clarify three issues: (1) the proper application of the so-called Indigent Court Costs Law, G. L. c. 261, §§ 27A - 27G ; (2) the process for obtaining *304 **834 audio recordings of Housing Court proceedings; and (3) the obligation of courts to provide reasonable accommodations for parties with disabilities.
1. The complexity and speed of summary process cases, and disparities in legal representation between landlords and tenants. Before we confront the specific issues raised by this case, we must address its broader context: the unique nature of a summary process eviction. Specifically, we note that summary process cases are complex, fast-moving, and generally litigated by landlords who are represented by attorneys and tenants who are not.[7] See Housing Court Department, Fiscal Year 2018 Statistics.
We include a full discussion of the complexities and speed of an eviction case in an Appendix to this opinion, but briefly summarize the process here. In a summary process action pursuant to G. L. c. 239, a landlord or homeowner asserts a statutory right to remove an occupant from property and recover possession of the property. See Fafard v. Lincoln Pharmacy of Milford, Inc., 439 Mass. 512, 515, 789 N.E.2d 147 (2003) ("Summary process is a purely statutory procedure and can be maintained only in the instances specifically **835 provided for in the statute" [citation omitted] ). Before filing a summary process action in court, a landlord must serve his or her tenant with a "notice to quit" informing the tenant that after a specified period of time, the landlord intends to evict the tenant. See Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 122, 113 N.E.3d 303 (2018) ("legally effective notice to quit is a condition precedent to a summary process action and part of the landlord's prima facie case").
Once the period specified in the notice to quit has ended, a landlord may serve his or her tenant with a "summons and complaint" specifying, among other things, the reasons for the requested eviction and the entry date by which the case will be commenced in the court. See Rule 2(b) of the Uniform Summary Process Rules (1993); Rule 2(d) of the Uniform Summary Process Rules (1993). This entry date must be scheduled for a Monday seven to thirty *305 days after the tenant's receipt of the summons and complaint. See Rule 2(b) of the Uniform Summary Process Rules ; Rule 2(c) of the Uniform Summary Process Rules (1993). The tenant's deadline to file an answer is determined from the entry date: no later than the Monday following the entry date, the tenant must file an answer denying any disputed statement in the complaint and setting forth all applicable defenses or counterclaims. See Rule 3 of the Uniform Summary Process Rules (1993); Rule 5 of the Uniform Summary Process Rules (1980). Also by the Monday following the entry date, either party may file a request for discovery. See Rule 7(a) of the Uniform Summary Process Rules (1993).
An eviction hearing is automatically scheduled to take place on the second Thursday following the entry date. See Rule 2(c) of the Uniform Summary Process Rules. If either party files a request for discovery, this hearing is postponed to the fourth Thursday following the entry date. See Rule 7(b) of the Uniform Summary Process Rules (1993). On the date of the hearing, the parties may settle the dispute themselves, mediate their dispute with a housing specialist, or proceed to trial. If the parties reach an agreement, whether through settlement discussions or mediation, and that agreement is approved by a judge, it becomes a binding court order. See Boston Hous. Auth. v. Cassio, 428 Mass. 112, 113-114, 697 N.E.2d 128 (1998). If the parties proceed to trial, the judge issues a decision from which either party may appeal within ten days. G. L. c. 239, § 5 (a ).
Where a judgment enters in favor of the landlord after trial and **836 the tenant files a notice of appeal, the tenant generally may not be evicted until the appeal is resolved because execution upon the judgment generally is stayed pending appeal.[8] See Mass. R. Civ. P. 62 (d), 365 Mass. 829 (1974). However, a court may order that the tenant provide the court with an appeal bond payable to the landlord or pay a sum of money for the use and occupancy of the premises while the appeal is pending. See G. L. c. 239, §§ 5 - 6.[9] In contrast, where a default judgment enters in favor of the landlord and the tenant files a motion for relief from that judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), an appeal from the denial of that motion does not stay execution unless a separate motion to stay is allowed. See id. ("motion under [ Mass. R. Civ. P. 60 (b) ] does not affect the finality of a judgment or suspend its operation"); Mass. R. Civ. P. 62 (b), 365 Mass. 829 (1974) (court in its discretion may stay execution of judgment pending decision on motion for relief from judgment).
If the judge concludes that the landlord is entitled to possession of the property and the ten-day window passes without a notice of appeal being filed, the landlord may obtain an execution authorizing a sheriff or constable to serve the tenant with forty-eight hours' notice of eviction. G. L. c. 239, §§ 3, 5 (a ). Once these forty-eight hours have expired, a tenant and his *306 or her possessions may be physically removed from the property. G. L. c. 239, § 3. A residential defendant, however, may apply for up to a six-month stay of execution where the tenancy was terminated without fault and the termination was not based on the tenant's failure to pay rent.[10] See G. L. c. 239, §§ 9 - 10.
The complexity of a summary process eviction is exacerbated by the web of applicable statutes and rules. While the Uniform Summary Process Rules aim to outline each step of an eviction action, see Rules 1-13 of the Uniform Summary Process Rules, a **837 litigant must consider a variety of other rules and statutes in order to comprehend the full scope of the process. For instance, the substance of summary process eviction actions -- as well as various procedural details not addressed in the Uniform Summary Process Rules -- are governed by G. L. c. 239. And aspects of the process not specifically addressed by the Uniform Summary Process Rules are governed by the Massachusetts Rules of Civil Procedure, insofar as the latter rules "are not inconsistent with [the Uniform Summary Process Rules], with applicable statutory law or with the jurisdiction of the particular court in which they would be applied." Rule 1 of the Uniform Summary Process Rules (1980). Where a tenant seeks to waive the fees and costs associated with a Housing Court eviction action, the tenant must satisfy the eligibility requirements described in G. L. c. 261, §§ 27A - 27G. The various rules and statutes are not only complicated, but at times overlapping. See, e.g., G. L. c. 261, § 27A (describing appeal bonds as "extra fees and costs"); G. L. c. 239, § 5 (describing appeal bond requirement and waivers of appeal bond). Deciding when to apply which of these rules -- and how to resolve inconsistencies among them -- is therefore a formidable challenge for an unrepresented litigant seeking to comply with fast-moving deadlines, especially when that litigant is also facing the stress of a potential eviction.
Based on the above timeline, fewer than seven weeks might elapse between the time that the defendant is served with a notice to quit and the time that he or she is removed from his or her residence, provided that neither party requests discovery. Even if a discovery request is filed, the process can take fewer than nine weeks. The swiftness of this process reflects the purpose of eviction proceedings -- to provide " 'just, speedy, and inexpensive' resolution of summary process cases." Bank of N.Y. v. Bailey, 460 Mass. 327, 334, 951 N.E.2d 331 (2011), quoting Rule 1 of the Uniform Summary Process Rules. But it leaves little room for error. A defendant facing eviction is required to understand, in the time between compressed deadlines, the meaning of a notice to quit; the filing requirements for an answer, including those relating to defenses and counterclaims; the method for requesting and providing discovery; the workings of a trial or mediation; and the options available after a judgment has issued.
The challenges inherent in navigating a complex and fast-moving process are compounded for those individuals who face summary process eviction without the aid and expertise of an attorney.
**838 And the vast majority of tenants in the Housing Court proceed without the benefit of counsel -- in fiscal year 2018, 92.4 percent of Housing Court summary process defendants were unrepresented. See Housing Court Department, Fiscal Year 2018 Statistics. In contrast, 70.2 percent of plaintiffs initiating summary process eviction cases in the *307 Housing Court were represented by counsel.[11] Id. The result, in most cases, is that the landlord has an attorney who understands how to navigate the eviction process and the tenant does not.
The Housing Court has recognized the challenges inherent in the fact that "a significant number of litigants appear in court pro se and are unfamiliar with the Uniform Rules of Summary Process." Housing Court Standing Order 1-04 (2004). It therefore requires Housing Court judges to "apply the rules in a fair, reasonable and practical manner" and allows them to exercise their discretion to reschedule hearings and allow filings after their due date has passed. Id. The facts as alleged, however, reflect the continued difficulties that exist for unrepresented parties navigating a process characterized by complex requirements and tight deadlines.
Legal services organizations and attorneys working pro bono have sought to mitigate these difficulties by providing unrepresented litigants with free legal assistance. The "lawyer for a day program," for example, is available to Housing Court litigants on the date of their eviction hearings. See Housing Court Standing Order 1-01 (2001). This program, which operates on a first-come, first-served basis, "seeks to address the challenge and promote the fairness of the process by allowing self-represented parties to obtain limited representation from volunteer lawyers." Cambridge St. Realty, LLC, 481 Mass. at 133, 113 N.E.3d 303. See Housing Court Standing Order 1-01. A volunteer lawyer may, for instance, assist or represent a party during mediation, answer legal questions, or even enter an appearance in a litigant's eviction case. Legal services organizations and programs, however, are severely underresourced, leaving most individuals to face summary process without **839 legal representation. See Boston Bar Association, Investing in Justice: A Roadmap to Cost-Effective Funding of Civil Legal Aid in Massachusetts 1 (Oct. 2014) (due to insufficient resources, Massachusetts civil legal aid programs turn away approximately two-thirds of eligible cases).
In addition, a wealth of information on summary process evictions is available online.[12] But the intricacy and speed of the *308 process make it difficult for a self-represented litigant to understand the available resources. It is therefore important that self-represented litigants receive assistance from court clerks and from walk-in court service centers, where "nonattorneys help people navigate the court system by assisting with forms, providing information about court procedures, and answering questions about how the court works" (quotation and citation omitted). Rental Prop. Mgt. Servs. v. Hatcher, 479 Mass. 542, 549 n.8, 97 N.E.3d 319 (2018). Currently, court service centers exist in the Worcester court house and in five other court houses across the State.[13]
Lastly, it can be beneficial for self-represented litigants to work informally with one another and with other nonattorneys to acquire and spread information about navigating the eviction process. We acknowledge, of course, that it is unlawful for any nonattorney to engage in the unauthorized practice of law -- for **840 instance, by signing and filing a complaint on behalf of an unrepresented litigant. See Hatcher, 479 Mass. at 549-551, 97 N.E.3d 319. But there are plenty of ways for nonattorneys to assist litigants without venturing into the unauthorized practice of law. They may, for example, "provide information to self-represented litigants to help them understand their legal rights," "assist self-represented litigants in articulating the facts that are necessary to present the litigants' claims and defenses clearly, accurately, and comprehensively," and "help self-represented litigants navigate through a legal system the litigants may not adequately understand." Id. at 549, 97 N.E.3d 319 n.8. In a complex, high-stakes process where the right to counsel is not guaranteed and professional assistance is not universally available, the assistance provided by nonattorneys may be the only way for many litigants to learn about and assert their rights.
2. Waiver of fees and costs based on indigency. Under the Indigent Court Costs Law, G. L. c. 261, §§ 27A - 27G, indigent parties are able to obtain waivers or reductions of various fees and costs (including, for example, filing fees, fees related to the service of process, and appeal bond costs) incurred while litigating a summary process action. See G. L. c. 261, §§ 27A, 27B ; Reade v. Secretary of the Commonwealth, 472 Mass. 573, 574, 36 N.E.3d 519 (2015), cert. denied, --- U.S. ----, 136 S.Ct. 1729, 194 L.Ed.2d 813 (2016) (describing Indigent Court Cost Law's "mechanism for indigent persons to obtain waivers or reductions of court fees and other costs"). The Indigent Court Costs Law exists to "ensur[e] that the doors of the Commonwealth's courts will not be closed to the poor." Reade, supra. The equitable and consistent application of this law is therefore critically important to safeguarding every Massachusetts litigant's ability to "obtain right and justice freely, and without being obliged to purchase it."[14] Art. 11 of the Massachusetts Declaration of Rights. The facts as alleged, however, demonstrate the various challenges *309 presented by the fee and cost waiver application process. We seek to clarify this process here.
a. Determining whether an applicant is indigent. An individual is eligible for a fee waiver based on indigency only if one or more of the following applies: (1) the individual receives public assistance under the Massachusetts transitional aid to families with **841 dependent children program, the Massachusetts emergency aid to elderly, disabled and children program, the Federal supplemental security income program, the Massachusetts MassHealth program (formerly, Medicaid), or veterans benefits programs; (2) the individual's income, after taxes, does not exceed 125 percent of the current Federal poverty line;[15] or (3) the individual is unable to pay the court fees or costs without depriving him or herself (or those dependent on him or her) of the "necessities of life," including food, shelter, and clothing. G. L. c. 261, § 27A.
To apply for a fee waiver based on indigency, the landlord or tenant must file an affidavit of indigency demonstrating that he or she satisfies one or more of the above requirements.[16] G. L. c. 261, §§ 27B, 27C. Unless otherwise stated in a court order, all information submitted in an affidavit of indigency is confidential and may not be accessed by anyone other than authorized court personnel, the applicant, the applicant's attorney, or a representative with written consent from the applicant. See Reade, 472 Mass. at 574 n.2, 36 N.E.3d 519 ; Instructions to Courts on the Administration of the Indigent Court Costs Law 2 (2003). If the affidavit "appears regular and complete on its face," indicates that the affiant is indigent as defined above, and requests a waiver of "normal fees and costs," the clerk "shall grant such request forthwith without hearing and without the necessity of appearance of any party or counsel."[17] G. L. c. 261, § 27C (2).
If, however, the affidavit is not regular and complete on its face,[18] does not adequately demonstrate that the applicant is indigent **842 under § 27A, or seeks "extra" fees and costs, described infra, "the clerk or register shall forthwith bring the affidavit to the attention of the justice or judge." G. L. c. 261, § 27C (3). See Reade, 472 Mass. at 577, 36 N.E.3d 519 (waiver of extra fees and costs must be approved by *310 judge). Where no "extra" fees or costs are sought, this court's "Instructions to Courts on the Administration of the Indigent Court Costs Law" directs clerks to refer an affidavit to a justice or judge "where there is a 'significant question about whether the applicant is indigent.' " Reade, supra at 585, 36 N.E.3d 519, quoting Instructions to Courts on the Administration of the Indigent Court Costs Law, supra at 2. In determining whether a "significant question" warranting a judge's review exists, the clerk may consider the applicant's affidavit "as a whole," as well as any prior affidavits submitted to the court by the applicant. Reade, supra, citing Roe v. Rosencratz, 71 Mass. App. Ct. 901, 903, 877 N.E.2d 1280 (2007). If the clerk has serious reason to doubt the applicant's indigency under the statute, the clerk should transfer the affidavit to a judge for consideration. See Reade, supra at 585-586, 36 N.E.3d 519.
After an affidavit is referred to a judge, the judge has two options: grant the waiver request without hearing or schedule a hearing to determine the applicant's eligibility for a waiver. See G. L. c. 261, § 27C (3) - (4) (court may not deny request for waiver based on indigency without first holding hearing). Where a judge decides that a hearing is necessary to determine the applicant's eligibility for a waiver of costs and fees, such hearing must take place within five days. G. L. c. 261, § 27C (3).
If, at the hearing, the judge determines that there is a "serious question as to the affiant's indigency," the judge "shall consider the following facts with respect to the applicant as of the time of hearing, in the immediate past and with respect to the immediate future[:] his [or her] age, education, training, physical and mental ability and number of dependents; gross and net income; regular and extraordinary expense, if any; assets and liabilities; whether or not he [or she] is a recipient of public assistance and for what purposes; and any other facts which are relevant to the applicant's ability to pay court costs." Id. The judge shall then issue a decision allowing or denying the applicant's waiver application.
If the court denies a party's request to waive or reduce fees and costs, the applicant may appeal from this decision to a single **843 justice of the Appeals Court (if the matter arose in the Superior Court or Housing Court) or to the Appellate Division (if the matter arose in the District Court or Boston Municipal Court). See G. L. c. 261, § 27D. An applicant has seven days to file a notice of appeal. Id. Once the judge who denied the waiver application is notified that the applicant has chosen to appeal from the decision, the judge must -- within three days -- set forth his or her written findings and reasons justifying the denial. G. L. c. 261, §§ 27C (4), 27D. These findings must then be forwarded, along with the affidavit and request, to the court deciding the applicant's appeal. Id. Once the appellate court renders its decision on the fee waiver request, that decision is final under G. L. c. 261, § 27D. See Hunt v. Appeals Court, 444 Mass. 460, 463 n.2, 828 N.E.2d 522 (2005).
We urge judges to be mindful of the confidential nature of affidavits of indigency when conducting such hearings, and to avoid revealing sensitive information regarding a party's indigency whenever possible. We also urge judges presiding over a summary process case to make every effort to issue a decision regarding an applicant's indigency as quickly as practicable. See G. L. c. 261, § 27C (2) - (3) (regular requests shall be granted by clerk "forthwith"; applications raising significant questions about indigency or requesting extra costs shall be brought to attention of judge *311 "forthwith"). Where, because of a delay in the indigency determination, a Housing Court clerk or judge is unable to provide an indigent applicant with relevant documents, services, or objects in time for the applicant to review them in advance of an upcoming court appearance, we encourage Housing Court judges to exercise their discretion to postpone hearings as needed to ensure that all parties have sufficient time to prepare. See Housing Court Standing Order 1-04 ("Housing Court judges may reschedule hearings in the exercise of their sound discretion").
b. Process for waiving the cost of an audio recording. If the court, with or without a hearing, finds that the applicant is indigent, it may not deny a request for "normal fees and costs." G. L. c. 261, § 27C (4). The court also may not deny an indigent applicant's request for "extra fees and costs" if it finds that the "document, service or object is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he [or she] would have if he [or she] were financially able to pay." Id. It is therefore necessary, in evaluating an applicant's rights to a fee waiver, to distinguish between "normal" and "extra" fees and costs. The relevant statute, G. L. c. 261, § 27A, provides guidance, **844 [19] but does not explicitly address the question raised by the facts alleged in this case: whether the cost of obtaining an audio recording of prior trial court proceedings -- $ 50.50 for a compact disc or ten dollars for an online download -- should be considered "normal" or extra."
We agree with the Housing Court that the cost of an audio recording is technically an "extra cost" under G. L. c. 261, § 27A. This conclusion is in keeping with the established practice of our other trial courts, the text of the indigency affidavit form, and the examples of "extra costs" provided for by statute. Although the Housing Court has no rule or standing order addressing whether the cost of audio recordings is "normal" or "extra," the approach adopted by other Massachusetts trial courts is instructive. The Superior Court and the District Court, which also have jurisdiction over eviction actions, consider the cost of an audio recording to be an "extra cost" under G. L. c. 261, § 27A.[20] See Superior Court Standing Order 2-87 (1988); Rule 211 of the Special Rules of the *312 District Courts (1989). We see no reason for the recordings to be characterized differently in the Housing Court. Furthermore, the affidavit of indigency form approved by this court lists "[c]assette copies of tape recording of trial or other proceeding, needed to prepare appeal for applicant not represented by Committee **845 for Public Counsel Services" under Section 3 as "extra fees and costs."[21] Finally, our conclusion that the cost of audio recordings is an "extra cost" is supported by the fact that G. L. c. 261, § 27A, lists the cost of appeal bonds among "extra fees and costs." As further described in the Appendix, infra, a tenant wishing to appeal from a court's summary process decision is required to supply the trial court with an appeal bond to be paid to the landlord should the landlord prevail on appeal, unless the cost of that appeal bond is waived. See G. L. c. 239, § 5 (c ), (e ). If the cost of an appeal bond is considered "extra," it makes sense that the cost of audio recordings is likewise considered "extra," regardless of whether the audio recordings are required for the appeal to proceed. See generally Mass. R. A. P. 8, as appearing in 481 Mass. 1611 (2019) (describing assembly of record on appeal).
We note, however, that classifying the cost of a trial court audio recording as an "extra cost" should not prevent many indigent litigants from obtaining these recordings at no cost. Under G. L. c. 261, § 27C (4), a judge is required to grant a request for a waiver of extra fees and costs if he or she finds "the document, service or object is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he [or she] would have if he [or she] were financially able to pay." The standard is "essentially one of reasonableness, and looks to whether a defendant who was able to pay and was paying the expenses himself, would consider the 'document, service or object' sufficiently important that he would choose to obtain it in preparation for his [or her] trial." Commonwealth v. Lockley, 381 Mass. 156, 160, 408 N.E.2d 834 (1980). "The test is not whether a particular item or service would be acquired by a defendant who had unlimited resources, nor is it whether the item might conceivably contribute some assistance to the [case presented] by the indigent person.... The test is whether the item is reasonably necessary to prevent the party from being subjected to a disadvantage in preparing or presenting his case adequately, in comparison with one who could afford to pay for the preparation which the case reasonably requires." Id. at 160-161, 408 N.E.2d 834.
**846 In deciding whether an audio recording satisfies this test, a judge may look to factors including the cost of the recording and its potential value to the litigant. Id. at 161, 408 N.E.2d 834. See Commonwealth v. Salazar, 481 Mass. 105, 106 n.2, 112 N.E.3d 781 (2018). The cost of a recording is $ 50.50 for a compact disc or ten dollars for an online download -- potentially substantial for an indigent party but modest for a person who can afford to pay. Contrast Salazar, supra (no error in denial of motion for funds where estimated cost of translation was $ 12,348, defendant had access to translator throughout trial, and his counsel was provided with trial transcripts). And as illustrated by the facts alleged in this case, audio recordings can serve a number of *313 valuable purposes for parties facing further court appearances or appeals: they allow litigants to learn what happened at a hearing the litigants missed or did not fully comprehend, to prepare for subsequent hearings, and to formulate appeals based on alleged errors at trial. This means, under the test described in Lockley, 381 Mass. at 160-161, 408 N.E.2d 834, that audio recordings will often be "reasonably necessary" for an applicant to adequately prepare for his or her trial or appeal. See G. L. c. 261, § 27C (4). We therefore expect that judges will allow motions seeking fee waivers for audio recordings where (1) the applicant qualifies as indigent and (2) the applicant has an upcoming hearing related to the prior recorded proceedings or is pursuing a nonfrivolous appeal to which the requested audio recordings are relevant.[22] Cf. G. L. c. 239, § 5 (e ) (indigent party's motion to waive appeal bond shall be allowed if court "is satisfied that the person requesting the waiver has any defense which is not frivolous and is indigent"). We further expect that judges will do so without hearing unless the affidavit raises significant questions as to the applicant's indigency or the recordings' potential value to the applicant.
3. Reasonable accommodations for parties with disabilities. Several petitioners claim that the Housing Court improperly denied their requests for reasonable accommodations, thereby denying them equal access to the courts. Specifically, the petitioners allege that they were unable to attend or to fully participate in their eviction **847 hearings due to the court's failure to accommodate their disabilities. For this reason, the petitioners argue, their need to access audio recordings of the hearings was heightened. Based on the record before us, which provides little information about the specific disabilities at issue or the particular accommodations requested, we are unable to evaluate the individual claims of these petitioners. We do, however, take this opportunity to clarify and confirm the obligation of Massachusetts courts to provide reasonable accommodations to litigants with disabilities.[23]
Article 114 of the Amendments to the Massachusetts Constitution provides that "[n]o otherwise qualified handicapped[24 ] individual shall, solely by reason of his [or her] handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth." Relatedly, the Massachusetts Equal Rights Act (MERA) provides that "[a]ny person within the commonwealth, regardless of handicap ... shall, with reasonable *314 accommodation, have the same rights as other persons to ... sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, including, but not limited to, the rights secured under [art. 114] of the Amendments to the Constitution." G. L. c. 93, § 103 (a ). These laws exist to address the " 'pervasive unequal treatment' of individuals with disabilities," who "have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society." McDonough, 457 Mass. at 514, 528, 930 N.E.2d 1279, quoting Tennessee v. Lane, 541 U.S. 509, 516, 524, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). It is therefore critically important that these laws be enforced in our courts, where "[e]very subject of the commonwealth" has a right to obtain justice (emphasis added). Art. 11 of the Massachusetts Declaration **848 of Rights.
In McDonough, 457 Mass. at 520 n.19, 528, 930 N.E.2d 1279, we addressed the duty of Massachusetts courts to make reasonable accommodations for witnesses with disabilities who require accommodations in order to testify in a criminal trial. We concluded, in relevant part, that (1) "where a witness with a disability requests accommodation in order to testify, MERA requires that the court provide such accommodation, so long as it is 'reasonable' " and (2) "where there is a dispute concerning such a witness's request for accommodation, a judge should conduct a hearing to resolve the dispute, preferably before trial, and the witness should be provided with reasonable accommodation, if available, during the pretrial hearing."[25] Id. at 528, 930 N.E.2d 1279, quoting G. L. c. 93, § 103 (a ). The court also concluded that in order to facilitate appellate review of decisions concerning requests for accommodation, judges "should make findings adequate to permit such review."[26] McDonough, supra at 526, 930 N.E.2d 1279.
We see no reason to limit these aspects of the McDonough holding to witnesses or to criminal trials. See id. at 520 n.19, 930 N.E.2d 1279 (noting that "[s]ome or all of the ... trial court guidance" outlined may be applicable in civil context). We therefore conclude that where a party in a summary process eviction action alerts the court and the adverse party to a disability requiring accommodation, the court, if it determines that the *315 party indeed has a disability, shall provide the disabled party with reasonable accommodation. **849 See Massachusetts Court System, ADA Accessibility Policy (2018) (Accessibility Policy) (recognizing duty, where reasonable, to "provide appropriate aids and services to qualified persons with disabilities so they can participate equally in the services, programs, or activities of the Judiciary"). What accommodation is reasonable must be determined on an individualized basis depending on the particular circumstances presented. See Garcia v. Department of Hous. & Community Dev., 480 Mass. 736, 749, 108 N.E.3d 945 (2018) ("The determination whether an accommodation is reasonable is fact-specific, and made on a case-by-case basis"). The "ADA does not require the Judiciary to take any action that would fundamentally alter the nature of its services, programs, or activities, or result in an undue financial or administrative burden." Accessibility Policy, supra. We further conclude that judges considering requests for reasonable accommodations should accompany their decisions with "findings adequate to permit [appellate] review."[27] McDonough, 457 Mass. at 526, 930 N.E.2d 1279.
We recognize that where a party's disability interferes with his or her ability to appear in court, holding an in-court hearing to determine whether accommodations are reasonable creates its own set of problems. Such issues must be addressed by the Housing Court on a case-by-case basis.
Conclusion. We acknowledge the many challenges that exist for self-represented litigants navigating eviction cases in the Housing Court, and intend this opinion and its Appendix to provide guidance regarding various aspects of summary process. Because we conclude that the single justice did not abuse his discretion or otherwise err in denying the G. L. c. 211, § 3, petition, however, we affirm the judgment.
So ordered.
**850 APPENDIX .
Because summary process is designed "to secure the just, speedy, and inexpensive determination" of eviction actions, Rule 1 of the Uniform Summary Process Rules (1980), it progresses rapidly through a series of complex steps and deadlines. This Appendix is meant as a guide for litigants seeking to navigate those steps and deadlines; it does not purport to be a comprehensive treatise. In formulating this guide, we reviewed the rules, statutes, and case law relevant to summary process evictions, as well as publicly available legal resources, including those listed in the opinion accompanying this Appendix, see ante at note 12. We are mindful, however, of the possibility that this guide may not always reflect the way that the described rules and statutes are applied by clerks and judges in every division of the Housing Court and in other trial courts with jurisdiction over eviction actions. There is, perhaps, no better demonstration of the complexity of a summary process eviction action than our own recognition that this Appendix may not fully capture day-to-day practices at the trial court level.
1. Notice to quit. Prior to eviction, a landlord must serve the tenant with a "notice to quit" to inform the tenant that the landlord will be seeking eviction after a specified period of time. See Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 122, 113 N.E.3d 303 (2018) ("legally effective notice to quit is a condition *316 precedent to a summary process action and part of the landlord's prima facie case"). A tenant is entitled to "actual receipt" of the notice to quit "within the time prescribed and before an eviction action is brought." Harris vs. Munro, Mass. App. Div., 1999 WL 788684 (Dist. Ct. Mar. 9, 1999), citing Regan v. Atlantic Ref. Co., 304 Mass. 353, 354, 23 N.E.2d 869 (1939). "The burden is on the landlord to establish that he [or she] provided the requisite notice in compliance with the statute." Harris, supra, citing Ryan v. Sylvester, 358 Mass. 18, 21, 260 N.E.2d 148 (1970).[1]
Because the document's title -- "notice to quit" -- does nothing to clarify its meaning, a tenant may reasonably misunderstand the legal force of a notice to quit. A standard notice to quit states that a tenant may be evicted if he or she fails to vacate the premises within a certain period of time.[2] Receipt of a notice to quit, however, does not legally require the tenant to move out of his or her home. See Commonwealth v. Chatham Dev. Co., 49 Mass. App. Ct. 525, 528, 731 N.E.2d 89 (2000). Rather, it simply declares the landlord's intent to go to court to seek an eviction order if the tenant does not move out voluntarily before the stated deadline. Nevertheless, a tenant may reasonably -- but incorrectly -- believe the notice to quit to mean that he or she must move out before the deadline.
**851 The requirements and timeline for a notice to quit vary based on the reason for eviction and the type of tenancy.
a. Notice to quit for failure to pay rent. Where the eviction is based on a tenant's failure to pay rent, fourteen days' notice to quit must be provided in writing. See G. L. c. 186, § 12 (failure to pay rent owed under tenancy at will); G. L. c. 186, § 11 (failure to pay rent owed under written lease). If a tenant with no formal written lease agreement (a tenant at will) who has not received a notice to quit for nonpayment of rent in the past year pays the rent due within ten days of receiving notice to quit, the tenant "cures" the missing payments and thereby prevents the tenancy from terminating. G. L. c. 186, § 12. The tenant at will must be notified of this right to cure in writing. Id. In the absence of such written notification, the tenant at will's deadline to pay rent is extended to the day that the answer in a summary process action is due (described in part 3, infra ). Id. If a tenant with a written lease agreement (tenant under lease) repays (1) the rent owed, (2) any interest on the rent owed, and (3) the landlord's actual costs for filing an eviction case by the day the answer is due, any missed payments are "cured" and the tenant may not be evicted. G. L. c. 186, § 11. A landlord, however, is not required by statute to notify a tenant under lease of this right to cure. See Rockport Schooner Co. v. Rockport Whale Watch Corp., 58 Mass. App. Ct. 910, 911, 789 N.E.2d 151 (2003) ("there is no explicit statutory requirement that a landlord notify a tenant under a written lease of the *317 tenant's right to cure"). This decreases the chance that a tenant under lease will understand the full extent of his or her right to avoid eviction following receipt of a notice to quit.[3]
b. Notice to quit for reasons unrelated to rent payments. Where the eviction is not based on a tenant's failure to pay rent, the eviction process also varies based on the type of tenancy. In a tenancy at will, either the landlord or the tenant may terminate the tenancy by giving three months' written notice. G. L. c. 186, § 12. Where the rent is payable more frequently than once every three months, notice is sufficient if "it is equal to the interval between the days of payment or thirty days, whichever is longer." Id. This means, in the case of most tenancies where rent is payable monthly, that one month's notice will be sufficient to terminate the tenancy. In a tenancy under lease, the notice requirements are governed by the terms of the lease, provided that those terms are not unlawful. See Cambridge St. Realty, LLC, 481 Mass. at 130-132, 113 N.E.3d 303 (evaluating legal sufficiency of notice to quit under lease terms); Ciriello vs. Fortin, Mass. App. Div., No. 11-ADMS-10002, 2011 WL 2623543 (Dist. Ct. July 1, 2011) ("a notice to quit must be timely, in compliance with both the terms of the lease and the requirements of law"). See also G. L. c. 186, § 15A ("Any provision of a lease ... relating **852 to residential real property whereby a lessee or tenant enters into a covenant, agreement or contract ... the effect of which is to waive the notices required ... shall be deemed to be against public policy and void").
Lastly, where a title-holding plaintiff seeks to evict a former homeowner following a foreclosure, the title holder typically serves the occupant with at least seventy-two hours' notice to quit.[4] See, e.g., U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 424, 5 N.E.3d 882 (2014) ; Aurora Loan Servs., LLC v. Murphy, 88 Mass. App. Ct. 726, 728, 41 N.E.3d 751 (2015).
2. Service of summons and complaint; entry of action. Once the deadline stated in the notice to quit has passed, the landlord may serve his or her tenant with a "summons and complaint" specifying in "concise, untechnical form and with sufficient particularity and completeness" the reasons for the requested eviction.[5] See *318 Rule 2(b) of the Uniform Summary Process Rules (1993); Rule 2(d) of the Uniform Summary Process Rules (1993). The basis for the landlord's eviction action is limited to the reasons for eviction provided in the notice to quit. Strycharski v. Spillane, 320 Mass. 382, 384-385, 69 N.E.2d 589 (1946). Where a landlord seeks to evict the defendant for reasons other than those provided in the notice to quit, the landlord must "recommence the summary process procedure and issue a new notice to quit" explaining the new grounds for eviction, and then file a new summary process summons and complaint if the tenant chooses not to vacate the premises. Federal Nat'l Mtge. Ass'n v. Nunez, 460 Mass. 511, 520 n.11, 952 N.E.2d 923 (2011), citing Strycharski, supra.
Before initiating an action in the Housing Court, the landlord must serve his or her tenant with a copy of the summons and complaint. See Rule 2(b) of the Uniform Summary Process Rules ("date of service ... shall be deemed the date of commencement of the action subject to proper entry"). More specifically, the tenant must receive a copy of the summons and complaint between seven and thirty days before the "entry date" by which the landlord is required to file relevant documents in the Superior Court, the District Court, the Boston Municipal Court, or the Housing Court.[6] See id.; Rule 1 & commentary of the Uniform Summary Process Rules. The landlord must schedule this entry date for **853 a Monday or, if Monday happens to be a holiday, the following Tuesday. Rule 2(c) & commentary of the Uniform Summary Process Rules (1993). For example, if a landlord plans to serve his or her tenant with a copy of the summons and complaint on Wednesday, January 2, 2019, the entry date must be scheduled for a Monday between seven and thirty days from January 2. This means that the entry date could be scheduled for Monday, January 14, 2019; Tuesday, January 22, 2019 (because Monday, January 21, 2019, is Martin Luther King Jr. Day); or Monday, January 28, 2019. Once the landlord has filed the required documents with the court clerk, the summary process eviction case is entered. See Rule 2(d)-(e) of the Uniform Summary Process Rules (1993). If the landlord initiates his or her summary process action in the Superior Court, District Court, or Boston Municipal Court, the tenant may transfer that action to the Housing Court by filing a transfer form in both courts before the day of trial.[7] See Rule 4 of the Uniform Summary Process Rules (1982); G. L. c. 185C, § 20.
3. Answer. No later than the first Monday after the entry date, which could come as soon as two weeks after the tenant receives the summons and complaint, the tenant must file a written answer.[8] See *319 Rule 3 of the Uniform Summary Process Rules (1993). This answer shall deny every disputed statement in the complaint and set forth all of the tenant's defenses (reasons that the tenant should not be evicted), and may also set forth any of the tenant's counterclaims (reasons that the landlord owes money to the tenant).[9] Id. See also G. L. c. 239, § 8A.[10] Potential defenses and counterclaims include, for example:
(1) unlawful apartment conditions, in violation of G. L. c. 239, § 8A
**854 (tenant may preclude landlord from recovering possession where "premises are in violation of the standard of fitness for human habitation");
(2) breach of the implied warranty of habitability, see Jablonski v. Casey, 64 Mass. App. Ct. 744, 746, 835 N.E.2d 615 (2005), quoting Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 199, 293 N.E.2d 831 (1973) (property must be "fit for human occupation");[11]
(3) interference with the quiet enjoyment of the residential premises, in violation of G. L. c. 186, § 14 ;
(4) violation of the Massachusetts consumer protection act, G. L. c. 93A, § 2 ("unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful");[12] ,[13]
(5) retaliation, see G. L. c. 239, § 2A (where landlord initiates summary process *320 in retaliation for tenant's lawful actions, tenant can assert defense); G. L. c. 186, § 18 (where landlord or landlord's agent retaliates against tenant for tenant's lawful actions, tenant may receive damages); and
(6) discrimination, see Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 339, 50 N.E.3d 419 (2016) (in summary process action, occupant may assert affirmative defenses or counterclaims based on violation of antidiscrimination statute, **855 G. L. c. 151B).[14]
Although a tenant's time to respond to his or her landlord's complaint is sharply limited, the tenant must generally assert any affirmative defenses and counterclaims in the answer. See Rule 3 of the Uniform Summary Process Rules ("defendant shall ... state in the answer any affirmative defenses which may be asserted"); Aronovitz v. Fafard, 78 Mass. App. Ct. 1, 8, 934 N.E.2d 851 (2010) ("Affirmative defenses are waived when they are not raised in the first responsive pleading"); Rule 5 of the Uniform Summary Process Rules (1980) ("right to counterclaim shall be deemed to be waived as to the pending action if such a claim is not filed with the answer ... , unless the court shall otherwise order on motion for cause shown"). An unrepresented tenant is therefore expected, within a matter of weeks, to understand and set forth his or her legal rights, or risk waiving them.
4. Discovery. Once a summary process eviction case is commenced, the landlord and the tenant may obtain information relevant to the case -- known as "discovery" -- by serving a discovery demand on the opposing party and filing a copy of the demand with the court. See Rule 7(a) of the Uniform Summary Process Rules (1993). Service and filing of the discovery demand must take place on or before the first Monday after the entry date. Id. Parties may demand discovery in the form of written interrogatories (questions written by one party and submitted to the other party for responses), requests for admission (requests that the opposing party explicitly admit or deny particular statements), or requests for the production of documents. Id. Where either party submits a demand for discovery, the opposing party has a total of ten days to respond with the requested answers or documents. See Rule 7(c) of the Uniform Summary Process Rules (1993). This timeline may prove challenging for many unrepresented litigants, particularly when they do not have ready access to the requested materials.
5. Hearing date. Once a landlord commences his or her summary process case, a hearing is automatically scheduled, typically for the second Thursday following the Monday entry date. See Rule 2(c) of the Uniform Summary Process Rules. This hearing is automatically postponed for two weeks where either party requests discovery.
*321 See Rule 7(b) of the Uniform Summary Process Rules (1993). Under such circumstances, the party demanding discovery is required to notify the opposing party of the rescheduled trial date. Id. Although the summons and complaint refers to this Thursday court appearance as a "hearing," the full trial is expected to take place at this time. See Rule 2(c) of the Uniform Summary Process Rules. Thus, an unrepresented tenant might come to court prepared only for a preliminary hearing and learn instead that the case could be tried that day.
**856 If a tenant fails to appear in court on the day of his or her scheduled trial, he or she is defaulted at the time that the case is called, so long as the landlord has appeared. See Rule 10(a) of the Uniform Summary Process Rules (2004). If the landlord and the tenant appear in court but the tenant has not filed a timely answer to the landlord's complaint, the court postpones the trial date by one week, unless the landlord agrees in writing to proceed with trial immediately. Id.
A default may be removed at the court's discretion, either on its own initiative or by a party's written motion, "at any time prior to the entry of judgment on such default." Rule 10(c) of the Uniform Rules of Summary Process (2004). Default judgments issue at 10 A.M. on the business day following their entry, and are not subject to appeal.[15] See Rule 10(d) of the Uniform Summary Process Rules (2004); Rule 12 of the Uniform Rules of Summary Process (2004). An unrepresented tenant, then, has less than twenty-four hours to learn of a default judgment and timely move to contest it.[16]
If both the landlord and the tenant fail to appear for the hearing, the case must be dismissed seven days after the scheduled trial date, unless either party requests a new trial date before the expiration of seven days. Rule 10(a) of the Uniform Summary Process Rules. If a landlord does not appear for trial and the tenant appears for trial after having filed a timely answer, the case is dismissed. See Rule 10(b) of the Uniform Summary Process Rules (2004). However, if the tenant has not filed a timely answer and appears in court, and the landlord fails to appear, the court shall postpone the trial date by one week and send notice of this postponement to the landlord. See Rule 10(a) of the Uniform Summary Process Rules. Then, if the landlord fails to appear for the rescheduled trial date, the case shall be dismissed. Id.
Where both parties are present in the Housing Court on the day of the hearing, they are faced with a decision: proceed to trial, or attempt to reach a mutually satisfactory agreement through negotiation or mediation. Mediation is an informal, confidential process during which the parties meet with a housing specialist to discuss a potential settlement.[17] If the parties reach an agreement -- either on their own or *322 with the help of a mediator -- and that agreement is approved by the judge, it becomes a binding court order.[18] Boston Hous. Auth. v. Cassio, 428 Mass. 112, 113-114, 697 N.E.2d 128 (1998). **857 Where it is not settled through mediation, a summary process eviction case may proceed in a bench trial or a jury trial. See Rule 8 of the Uniform Summary Process Rules (1980); Cort v. Majors, 92 Mass. App. Ct. 151, 153, 82 N.E.3d 1089 (2017). If a party wishes to have the matter heard by a jury, he or she must file a demand for a jury trial no later than the due date for the defendant's answer (the Monday following the entry date). See Rule 8 of the Uniform Summary Process Rules. This deadline, however, is not clearly stated on the summons and complaint form or on the summary process answer form.[19] An unrepresented tenant may therefore unknowingly miss the deadline to timely notify the court of his or her decision to exercise the constitutional right to trial by jury. See Cort, supra (right to trial by jury declared in art. 15 of Massachusetts Declaration of Rights and incorporated in Mass. R. Civ. P. 38, as amended, 423 Mass. 1406 [1996], and Rule 8 of the Uniform Summary Process Rules ).
At 10 A.M. on the day after a judge renders his or her decision in a summary process action, the decision is entered on the docket. See Rule 10(d) of the Uniform Summary Process Rules. Notice of the judgment must then be sent to all parties. See Rule 10(e) of the Uniform Summary Process Rules (2004).
6. Appeal. After a court issues its decision, the parties have ten days to file a notice of appeal. G. L. c. 239, § 5 (a ). Our courts have "required strict adherence to the short period for claiming an appeal prescribed by G. L. c. 239, § 5," explaining that the "process provided for in [G. L. c. 239] is designed, after all, to be summary." Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 504-505, 678 N.E.2d 180 (1997). If, however, a party files certain postjudgment motions (i.e., a motion for judgment notwithstanding the verdict, Mass. R. Civ. P. 50 [b], as amended, 428 Mass. 1402 [1998]; motion to alter or amend findings, Mass. R. Civ. P. 52 [b], as amended, 423 Mass. 1402 [1996]; motion to alter or amend a judgment, Mass. R. Civ. P. 59 [e], 365 Mass. 827 [1974]; motion for a new trial, Mass. R. Civ. P. 59, 365 Mass. 827 [1974]; or motion for relief from judgment, Mass. R. Civ. P. 60 [b], 365 Mass. 828 [1974] ) within the ten-day period for appeal, the ten-day deadline to file a notice of appeal starts anew on the day that the postjudgment motion is decided.[20] See *323 Mass. R. A. P. 4 (a) (2), as appearing in 481 Mass. 1606 (2019); Manzaro v. McCann, 401 Mass. 880, 882, 519 N.E.2d 1337 (1988). An **858 eviction order (execution), described in part 7, infra, may not issue until the expiration of the ten-day period for appeal. See G. L. c. 239, § 5 (a ).
Where a judgment enters in favor of the landlord after trial and the tenant files a notice of appeal, the tenant generally may not be evicted until the appeal is resolved because execution upon the judgment generally is stayed pending appeal.[21] See Mass. R. Civ. P. 62 (d), 365 Mass. 829 (1974). In contrast, where a default judgment enters in favor of the landlord and the tenant files a motion for relief from that judgment under Mass. R. Civ. P. 60 (b), an appeal from the denial of that motion does not stay execution unless a separate motion to stay is allowed. See Mass. R. Civ. P. 60 (b) ("motion under [ Mass. R. Civ. P. 60 (b) ] does not affect the finality of a judgment or suspend its operation"); Mass. R. Civ. P. 62 (b), 365 Mass. 829 (1974) (court in its discretion may stay execution of judgment pending decision on motion for relief from judgment).
Before a tenant's appeal is allowed to proceed, the tenant may be ordered to furnish the court with an appeal bond "in a sum as the court orders," payable to the landlord. G. L. c. 239, § 5 (c ). That bond must be "conditioned to pay to the plaintiff, if final judgment is in plaintiff's favor, all rent accrued at the date of the bond, all intervening rent, and all damage and loss which the plaintiff may sustain by the withholding of possession of the land or tenements demanded and by any injury done thereto during the withholding, with all costs, until delivery of possession thereof to the plaintiff." Id. In actions for possession after a foreclosure, the appeal bond must be conditioned to pay "all costs and ... a reasonable amount as rent of the land from the day when the mortgage was foreclosed until possession of the land is obtained by the plaintiff." G. L. c. 239, § 6. In actions for possession after the land is purchased, the appeal bond must be conditioned to pay "all costs and ... a reasonable amount as rent of the land from the day that the purchaser obtained title to the premises until the delivery of possession thereof to him, together with all damage *324 and loss which he may sustain by withholding of possession of the land or tenement demanded, and by any injury done thereto during such withholding with all costs." Id. **859 An indigent party may move to waive the appeal bond by filing a motion within the ten-day period for appeal. G. L. c. 239, § 5 (e ). The court must grant this motion if it finds (1) that the appellant is indigent and (2) that the appellant has a nonfrivolous defense to the eviction action. Id. A judge's "determination that a defense is frivolous requires more than the judge's conclusion that the defense is not a winner and that the party claiming it is wrong as a matter of law. Frivolousness imports futility -- not a 'prayer of a chance.' " Home Sav. Bank of Am., FSB v. Camillo, 45 Mass. App. Ct. 910, 911, 697 N.E.2d 134 (1998), quoting Pires v. Commonwealth, 373 Mass. 829, 838, 370 N.E.2d 1365 (1977). Even if the appeal bond is waived, a court may order the tenant to make "use and occupancy" payments -- similar to rent -- while an appeal is pending. See G. L. c. 239, § 5 (e ) ; Kargman v. Dustin, 5 Mass. App. Ct. 101, 110, 359 N.E.2d 971 (1977) ("Legislature, after providing for the waiver of bond in hardship cases, decided to redress an imbalance in summary process appeals to permit a judge, in the exercise of his sound discretion, to order payment of an appropriate portion of the rent as security"). If a tenant fails to pay the appeal bond or use and occupancy as ordered, his or her appeal may be dismissed. See G. L. c. 239, § 5 (h ) ; Cambridge St. Realty, LLC, 481 Mass. at 137 n.19, 113 N.E.3d 303 ( G. L. c. 239, § 5 (h ), "permits dismissal of an appeal by the trial court ... when a tenant fails to post the initial appeals bond or use and occupancy payment").
7. Execution. If the court finds that the landlord is entitled to possession of the property and that the tenant can therefore be evicted, judgment shall issue in the landlord's favor. G. L. c. 239, § 3. Then, if the tenant has not appealed from the judgment within the ten-day period for appeal, an eviction order (execution) shall issue upon the landlord's application, so long as the landlord applies for the eviction order within three months of the judgment.[22] See id.; G. L. c. 235, § 23 ("Executions for possession of premises rented or leased for dwelling purposes obtained in actions pursuant to [G. L. c. 239] shall not be issued later than three months following the date of judgment, except that any period during which execution was stayed ... shall be excluded from the computation ..."); Rule 13 & commentary of the Uniform Summary Process Rules & Commentary (1980). Once an execution order has issued, a sheriff or constable can serve the tenant with forty-eight hours' notice of eviction. G. L. c. 239, § 3. This notice must inform the tenant that, if he or she does not move out by a certain date and time, the officer will physically remove the tenant -- as well as his or her possessions -- from the premises.
*325 Id. The execution may be used to evict a tenant only on a nonholiday weekday between 9 A.M. and 5 P.M. Id. If an eviction order is not used within three months of its issuance, it expires. G. L. c. 235, § 23.
**860 A residential defendant facing execution may apply to the court for a stay of execution pursuant to G. L. c. 239, §§ 9 - 10, if his or her tenancy was terminated without fault and not based on a failure to pay rent. G. L. c. 239, § 9. Upon receiving an application for a stay of execution, the court shall hold a hearing. G. L. c. 239, § 10. If, at this hearing, the court finds that "the premises of which possession is sought to be recovered are used for dwelling purposes; that the applicant cannot secure suitable premises for himself [or herself] and his [or her] family elsewhere within the city or town in a neighborhood similar to that in which the premises occupied by him [or her] are situated; that he [or she] has used due and reasonable effort to secure such other premises; that his [or her] application is made in good faith and that he [or she] will abide by and comply with such terms and provisions as the court may prescribe; or that by reason of other facts [a stay of execution] will be warranted," the court may grant a stay of up to six months, or twelve months in the case of premises occupied by a person who is disabled or at least sixty years of age. G. L. c. 239, §§ 9 - 10.
8. Timeline example. The following timeline illustrates the above-described process.
If a landlord serves his or her tenant with a fourteen-day notice to quit on Thursday, October 25, 2018, the two-week notice period will expire on Thursday, November 8. The landlord can then serve his or her tenant with a summons and complaint on Friday, November 9. This summons and complaint must specify an entry date by which the landlord must file his or her case in court. Under these circumstances, the soonest available entry date would be Monday, November 19 (a Monday between seven and thirty days from the date that the tenant was served with the summons and complaint). By the Monday following the entry date -- Monday, November 26 -- the tenant must file his or her answer with the court. Also by Monday, November 26, either party may file a request for discovery.
The trial is automatically scheduled to take place two Thursdays from the entry date -- on Thursday, November 29. If either party requests discovery, this trial date is pushed back by two weeks to Thursday, December 13. For the purpose of this timeline, we assume that one or both parties requested discovery. To calculate the timeline in the absence of a discovery request, consider each of the following events as occurring two weeks earlier.
On Friday, December 14 (the day after the December 13 trial), judgment could enter in favor of the landlord or tenant. Then, the losing party has ten days -- until Monday, December 24 -- to file a notice of appeal. If the landlord prevails and neither party appeals from the decision, execution could issue on Wednesday, December 26 (because Tuesday, December 25, is a holiday). A sheriff could then serve the tenant with forty-eight hours' notice of eviction and, if the tenant remains on the premises, physically evict the tenant two days later, on Friday, December 28. Based on this timeline, approximately nine weeks would elapse between the date on which the tenant received a notice to quit and the date on which he or she could be forcibly removed from the property.

This case is one of three that we decide today involving self-represented litigants in summary process eviction cases. See Evans v. Federal Home Loan Mtge. Corp., 481 Mass. (2019); Hilton v. Central Div. of the Housing Court Dep't, 481 Mass. (2019).

We acknowledge the amicus brief submitted by the American Civil Liberties Union of Massachusetts, Inc., and the Center for Public Representation.

With regard to the petitioners' specific claims regarding fee waivers for the cost of audio recordings, G. L. c. 261, § 27D, allows for appellate review in "any case where the court denies a request for waiver, substitution or payment by the commonwealth of fees and costs." And with regard to any potential claims under art. 114 of the Amendments to the Massachusetts Constitution, the Massachusetts Equal Rights Act (MERA), or the Americans with Disabilities Act (ADA), the petitioners could have initiated a separate action in a court of competent jurisdiction or argued on direct appeal that they were prejudiced by a judge's erroneous denial of a request for reasonable accommodations. See McDonough, petitioner, 457 Mass. 512, 520, 930 N.E.2d 1279 (2010) ; G. L. c. 93, § 103 (b ) ("Any person whose rights under the provisions of subsection [a ] [of MERA] have been violated may commence a civil action for injunctive and other appropriate equitable relief ... in the superior court ..."); 42 U.S.C. § 12133 (describing "remedies, procedures, and rights" available to persons alleging violation of Title II of ADA). To the extent that the petitioners allege that they were prejudiced by other Housing Court actions, they could likewise have pursued those claims on direct appeal.
We further note that the petitioners failed to comply with S.J.C. Rule 2:22, 422 Mass. 1302 (1996), which requires "[a]ny petition seeking to invoke the general superintendency power of the court pursuant to G. L. c. 211, § 3, [to] name as respondents and make service upon all parties to the proceedings before the lower court." This petition failed to name as respondents the various plaintiffs who initiated summary process eviction actions against the petitioners.

For the sake of simplicity, we often refer to Housing Court plaintiffs as "landlords" and Housing Court defendants as "tenants." We acknowledge that these terms do not fully capture all of the individuals who initiate and defend against summary process evictions. In fact, eight categories of persons may initiate a summary process eviction under G. L. c. 239, § 1 : (1) persons whose premises has been forcibly entered; (2) persons forcibly and unlawfully kept out of possession of their premises by one who entered the premises peaceably; (3) lessors whose tenants hold over -- that is, remain on the property -- without right after the termination of the lease; (4) purchasers of the premises after a mortgage has been foreclosed by a sale; (5) purchasers of the premises where the seller (or any person holding under the seller) refuses to surrender possession; (6) persons entitled to the premises under a tax title foreclosure by decree of the Land Court; (7) sellers of land where the purchaser is in possession of the premises but fails to take title as called for in the written agreement to purchase; and (8) persons who have obtained registered title in the Land Court, except where the person in possession has erected buildings or improvements on the land and held possession of the land for six years, or held the land under a title he or she had reason to believe was good. Under G. L. c. 239, § 1A, a landlord may initiate a no-fault summary process action thirty days prior to a lease's termination where certain statutory requirements are met and where there are "substantial grounds upon which the court could reasonably conclude that the defendant is likely to continue in possession of the premises at issue without right after the designated termination date."
We also note that many of the petitioners here are former homeowners who, after the foreclosure of their mortgages and the sale of their properties, remained in their homes. As a result, the new owners of their homes sought their eviction.

There is an exception to the general rule that no execution may issue while a timely filed appeal from the judgment is pending where the tenant is being evicted from public housing for one of several specified reasons, see G. L. c. 121B, § 32.

If a tenant fails to pay the appeal bond or use and occupancy payment as ordered, his or her appeal may be dismissed. See G. L. c. 239, § 5 ; Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 137 n.19, 113 N.E.3d 303 (2018) (G. L. c. 239, § 5 [h ], "permits dismissal of an appeal by the trial court ... when a tenant fails to post the initial appeals bond or use and occupancy payment").

Where the property is occupied by a disabled person or a person who is at least sixty years old, the court may grant up to a twelve-month stay of execution. G. L. c. 239, § 9.

We are mindful that a significant number -- close to thirty percent -- of plaintiffs seeking an eviction are unrepresented, see Housing Court Department, Fiscal Year 2018 Statistics, and that unrepresented landlords face their own challenges. We focus this opinion on the challenges faced by unrepresented tenants, however, because the petitioners before us were defendants in the Housing Court and because landlords are represented far more frequently than tenants.

Much of the information contained in this opinion is summarized online. We encourage tenants, occupants, landlords, and others involved in summary process eviction proceedings to visit the following web pages: https://www.mass.gov/eviction-for-tenants [https://perma.cc/7C5B-ZWLJ]; https://www.mass.gov/eviction-for-landlords [https://perma.cc/FQ45-45Y5]; https://www.mass.gov/guides/housing-appeals-guide [https://perma.cc/8T98-EATD]; https://www.boston.gov/sites/default/files/document-file-09-2017/eviction_guide_2017.pdf [https://perma.cc/E2VM-UGLY]; https://www.mass.gov/trial-court-rules/trial-court-rule-i-uniform-summary-process-rules [https://perma.cc/MBL6-WRJP];https://www.masslegalhelp.org/housing [https://perma.cc/FYX2YAEA]. Sample forms related to landlord-tenant disputes can be accessed at https://www.mass.gov/info-details/massachusetts-legal-forms-for-subjects-i-l [https://perma.cc/QD8H-LCMQ] and at https://www.masslegalhelp.org/housing/evictions-court-forms[https://perma.cc/V3BA-LHFW]. Tenants seeking legal aid can find useful resources at https://www.masslegalservices.org/FindLegalAid [https://perma.cc/F54C-QHLM]. Tenants facing eviction can learn how to properly respond to a landlord's case against them by filling out a free guided interview, available at https://www.gbls.org/MADE [https://perma.cc/YN6K-6C4X].

Walk-in court service centers exist at the Worcester Trial Court Complex, the Edward W. Brooke Courthouse in Boston, the Franklin County Courthouse in Greenfield, the Fenton Judicial Center in Lawrence, the George N. Covett Courthouse in Brockton, and the Roderick L. Ireland Courthouse in Springfield.

To ensure that litigants are informed of their right to access the courts regardless of their ability to pay, the clerk of each court is required to "conspicuously post in the part of his [or her] office open to the public a notice informing the public in plain language of the availability of waiver, substitution or payment by the commonwealth of fees and costs for indigent persons." G. L. c. 261, § 27C (5).

As of January 2019, an individual's income does not exceed 125 percent of the Federal poverty line if it is $ 15,612.50 for a household of one, $ 21,137.50 for a household of two, $ 26,662.50 for a household of three, $ 32,187.50 for a household of four, $ 37,712.50 for a household of five, $ 43,237.50 for a household of six, $ 48,762.50 for a household of seven, or $ 54,287.50 for a household of eight. For households comprised of more than eight people, $ 5,525 is added for each additional person. 84 Fed. Reg. 1167 (2019).

The affidavit of indigency form is available at https://www.mass.gov/files/documents/2017/09/01/affidavitofindigency.pdf[https://perma.cc/T3T3-V3DG].

The amici state in their brief that based on the experiences of counsel for indigent clients, clerks often approve indigency requests without hearing only if they are based on the applicant's receipt of public benefits. We clarify that based on the text of the statute, clerks are required to approve all fee waiver requests based on indigency where the affidavit is regular and complete on its face, demonstrates that the applicant is indigent under G. L. c. 261, § 27A, and requests a waiver of normal fees and costs. See G. L. c. 261, § 27C (2).

Where the application is incomplete, we expect clerks to notify the applicant that it is incomplete and invite the applicant to complete it. Incomplete applications should be brought to a judge only where the applicant fails to complete the application after having been alerted by the clerk to any missing information.

General Laws c. 261, § 27A, defines "[n]ormal fees and costs" as "the fees and costs a party normally is required to pay in order to prosecute or defend the particular type of proceeding in which he [or she] is involved." These costs "shall include, but not be limited to, the following: in all civil cases, filing or entry fees, including the surcharges required by [G. L. c. 262, § 4C ]; fees and related costs for service of process, including publications of a citation when publication is ordered; fees and costs for the issuance or service of a subpoena and witness fees for trial or deposition; jury trial fees; removal fees; costs assessed in a bill of costs; in equity, fees for the issuance of an injunction, restraining order, writ or other process; in the probate and family court department, fees for an amendment of record." Id.
"Extra fees and costs" are defined as "the fees and costs, in addition to those a party is normally required to pay in order to prosecute or defend his [or her] case, which result when a party employs or responds to a procedure not necessarily required in the particular type of proceeding in which he [or she] is involved." Id. These costs "shall include, but not necessarily be limited to, the cost of transcribing a deposition, expert assistance and appeal bonds and appeal bond premiums." Id.

The Land Court, the Juvenile Court, and the Probate and Family Court also consider the cost of an audio recording to be an "extra cost" under G. L. c. 261, § 27A. See Land Court Standing Order 1-18 (2018); Juvenile Court Standing Order 2-09 (2009); Rule 201 of the Supplemental Rules of the Probate and Family Court (2012).

Relatedly, a party seeking to download audio recordings online via For The Record -- a third-party provider allowing litigants to access trial court recordings at a cost of ten dollars -- is asked to confirm whether he or she has "an approved Affidavit of Indigency which includes allowances under Section 3 : Extra Fees and Costs" (emphasis added).

We note that in the District Court, which also has jurisdiction over eviction actions, audio recordings are always supplied at no cost to parties represented by a Committee for Public Counsel Services attorney, to the Attorney General's office, to any district attorney's office, to any other Commonwealth agency, and to police prosecutors. See Rule 211 of the Special Rules of the District Courts (1989).

We also encourage disabled tenants and tenants with disabled household members to consider working with the tenancy preservation program (TPP), available in the Housing Court. TPP aims to prevent homelessness by serving as a resource for tenants whose disabilities were directly related to the reason for their eviction. TPP, in the role of a neutral party, collaborates with landlords and tenants to investigate whether a tenancy can be preserved through reasonable accommodations for a tenant's disability. TPP may also help the parties create a plan for maintaining the tenancy, monitor the case, and create progress reports for the landlord, the tenant, and the court. If a tenancy cannot be preserved, TPP may help to coordinate the tenant's transition to a different home.

For the purposes of this opinion, we interpret "handicap" synonymously with "disability." See McDonough, 457 Mass. at 514 n.6, 930 N.E.2d 1279.

In various sections of their brief, the petitioners assert that the Housing Court violated their rights under Title II of the ADA. In Tennessee v. Lane, 541 U.S. 509, 533-534, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), the United States Supreme Court held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts," is constitutional. Because the question of the obligation of Massachusetts courts under the ADA has not been adequately briefed, however, we do not address our courts' obligations under the ADA here. Instead, we rely on MERA, on the Massachusetts Constitution, and on our own superintendence power to confirm Massachusetts courts' obligation to provide reasonable accommodations. See McDonough, 457 Mass. at 518 & n.16, 930 N.E.2d 1279 (declining to address scope of courts' obligations under ADA where question could be resolved under MERA).

The McDonough court further concluded that "where a judge precludes a witness with a disability from testifying by denying a request for accommodation, the party proffering the witness, but not the witness, may appeal the judge's interlocutory ruling as a matter of right to the Appeals Court." McDonough, 457 Mass. at 528, 930 N.E.2d 1279. Because the issue of interlocutory appeals has not been adequately briefed, we do not address it here. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief ...").

Although we require judges who deny requests for accommodation to put their reasons for denial on the record, we are mindful of the fact that such determinations often involve sensitive information. We therefore encourage judges, when making findings, to avoid the needless revelation of confidential information.

A notice to quit is considered compliant unless it includes "a material error or omission, i.e., a defect that has some meaningful practical effect." Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 130, 113 N.E.3d 303 (2018). The notice is therefore legally adequate even where it includes "minor errors of technicality or form." Id.

The sample fourteen-day notice to quit form available at https://www.mass.gov/files/documents/2016/08/wg/notice-quit14.pdf [https://perma.cc/X7PE-AH9S], for example, includes the following language: "Your rent being in arrears, you are hereby notified to quit and deliver up in fourteen (14) days from your receipt of this notice, the above described premises now held by you as my tenant. If you fail to so vacate, I shall employ the due course of law to evict you."

The potential for confusion is increased by the fact that some sample notice to quit forms, available online, include language that could cause a reasonable tenant to believe that there is no right to avoid eviction by repaying the full amount of rent due. The sample form available at https://www.mass.gov/files/documents/2016/08/wg/notice-quit-14.pdf [https://perma.cc/X7PE-AH9S], for instance, states that "[a]ll monies paid to the landlord after your receipt of this notice will be accepted as use and occupancy and not as rent, without waiving any right to possession of the premises, and without any intention of reinstating your tenancy or establishing a new tenancy." Although the form goes on to discuss a tenant's cure rights, this language is likely to create misunderstandings.

We note that institutional lenders and certain financial institutions that own foreclosed properties may not evict tenants who were entitled to occupy the property at the time of foreclosure "except for just cause or unless a binding purchase and sale agreement has been executed for a bona fide third party to purchase the housing accommodation." G. L. c. 186A, §§ 1 -2. See also Federal Nat'l Mtge. Ass'n v. Nunez, 460 Mass. 511, 512, 523, 952 N.E.2d 923 (2011).

A sample summary process summons and complaint form is available at https://www.mass.gov/files/documents/2016/08/pe/summary-process-complaint-rev.pdf [https://perma.cc/23R5-N9T4]. A landlord seeking to evict a tenant must obtain this form from the clerk's office. See Rule 2(a) of the Uniform Summary Process Rules (1993).

In order to initiate a summary process action, the landlord must file the original summons and complaint, return of service confirming the tenant's receipt of the summons and complaint, and a copy of the notice to quit. Rule 2(d) of the Uniform Rules of Summary Process (1993). Depending on the jurisdiction, the landlord may also be required to file a copy of a certificate of eviction granted by a rent control agency (or an affidavit of exemption) or a copy of an affidavit verifying compliance with local laws governing condominium conversion evictions. Id. The landlord must also pay an entry fee, unless that fee has been waived. Id.

A sample notice of transfer form is available at https://www.mass.gov/files/documents/2018/07/30/noticeoftransfer.pdf[https://perma.cc/87JE-8TZW].

If either party wishes to make an argument prior to trial, he or she must also file a written "pretrial motion" explaining the basis for that argument. See Rule 6 of the Uniform Summary Process Rules (1993). The deadline for submitting this motion is the same as the deadline for submitting the written answer -- the first Monday after the entry date. Id. Unless otherwise ordered by the court, pretrial motion hearings generally take place on the date that the case is originally scheduled for trial. Id. A motion to dismiss hearing, however, may take place sooner if (1) a motion to dismiss is filed and served on the plaintiff on or before the entry date and (2) the defendant so requests after notice to the plaintiff. Id.

A sample summary process answer form is available at https://www.mass.gov/files/documents/2018/01/31/summaryprocanswer.pdf [https://perma.cc/J6G5-9SL6].

General Laws c. 239, § 8A, states in relevant part that "[i]n any action under this chapter to recover possession of any premises rented or leased for dwelling purposes, brought pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant or occupant, the tenant or occupant shall be entitled to raise, by defense or counterclaim, any claim against the plaintiff relating to or arising out of such property, rental, tenancy, or occupancy for breach of warranty, for a breach of any material provision of the rental agreement, or for a violation of any other law."

The implied warranty of habitability, which reflects the State's public policy in favor of safe and habitable homes, cannot be waived or disclaimed. See Trustees of the Cambridge Point Condominium Trust v. Cambridge Point, LLC, 478 Mass. 697, 705-706, 88 N.E.3d 1142 (2018).

The Attorney General has promulgated detailed regulations interpreting G. L. c. 93A in the context of the landlord-tenant relationship. See 940 Code Mass. Regs. § 3.17 (1993) (unfair or deceptive acts or practices include, for example, commencing summary process action prior to expiration of time period stated in notice to quit, depriving tenant of access to property without receiving valid eviction execution, and requiring excessive security deposit).

A tenant may raise the first, second, or third defense or counterclaim described supra if, for example, his or her home is infested with bugs or rodents, suffers from severe plumbing or electrical problems, lacks heat or hot water, or fails to comply with State codes. See, e.g., Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 787, 633 N.E.2d 390 (1994) (apartment lacked adequate heat and hot water, was infested, had unsanitary common areas, and was in violation of fire and building codes). A tenant may raise the fourth defense or counterclaim described supra where such conditions result from the landlord's unfair or deceptive acts or practices. G. L. c. 93A, § 2 (a ). See Cruz Mgt. Co., supra at 790, 633 N.E.2d 390 ("substantial and material breach of the implied warranty of habitability" violates G. L. c. 93A); South Boston Elderly Residences, Inc. v. Moynahan, 91 Mass. App. Ct. 455, 470, 76 N.E.3d 272 (2017) ("failure by a landlord to cure a [sanitary] code violation within a reasonable time after notice constitutes a violation" of G. L. c. 93A); 940 Code Mass. Regs. § 3.17(6)(f) (willful violation of covenant of quiet enjoyment violates G. L. c. 93A).

Other potential defenses and counterclaims include, but are not limited to, a landlord's violation of the security deposit statute, see Meikle v. Nurse, 474 Mass. 207, 208, 49 N.E.3d 210 (2016) ("a violation of the security deposit statute is encompassed within the definition of 'counterclaim or defense' in G. L. c. 239, § 8A"), a landlord's termination of the tenancy in violation of regulations applicable to those living in Section 8 housing, see 24 C.F.R. § 982.310 (2018), and a landlord's failure to properly terminate the tenancy, for instance, by failing to serve the tenant with a legally adequate notice to quit, see G. L. c. 186, §§ 11 -13, 17.

After a default judgment issues, the defaulted party may seek to set aside that judgment by filing a motion under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974).

We do not address whether Rule 10(c)-(d) of the Uniform Summary Process Rules (2004) lawfully may be enforced where a party does not receive notice that a default judgment may issue until after the deadline to remove that default has passed.

Housing specialists are Housing Court employees who work as impartial mediators in cases commenced in the court. They are also tasked with providing the public with information on Massachusetts housing laws and available resources. At times, housing specialists also conduct inspections of residential properties to determine whether they comply with applicable codes or to resolve a dispute between parties regarding the condition of the property.

A sample summary process agreement for judgment form is available at https://www.mass.gov/files/documents/2018/01/31/agreementjudgment.pdf [https://perma.cc/7A87-Z4JS]. A sample stipulation form is available at https://www.mass.gov/files/documents/2018/01/31/new-civilagreement.pdf [https://perma.cc/37U3-ZWNB].

See https://www.mass.gov/files/documents/2016/08/pe/summary-process-complaint-rev.pdf [https://perma.cc/23R5-N9T4] (sample summary process summons and complaint form); https://www.mass.gov/files/documents/2018/01/31/summaryprocanswer.pdf[https://perma.cc/J6G5-9SL6] (sample summary process answer form).

The commentary to Rule 11 of the Uniform Summary Process Rules (1980) incorrectly states that "the running of time for appeal in summary process actions is not affected by the filing of a motion under Rule 60." While this statement of law was accurate when rule 11 became effective in 1980, it fails to capture a 2013 amendment to Mass. R. A. P. 4 (a), which added motions for relief from judgment under Mass. R. Civ. P. 60, 365 Mass. 828 (1974), to the list of motions that reset the time for appeal. Compare Mass. R. A. P. 4 (a), as amended, 464 Mass. 1601 (2013) (including "relief from judgment under Rule 60" among motions resetting time for appeal) with Mass. R. A. P. 4 (a), as amended, 430 Mass. 1603 (1999) (excluding Mass. R. Civ. P. 60 from list of covered motions). Rule 4 (a) was amended again in 2019, and the amended version continues to include motions for relief from judgment under Mass. R. Civ. P. 60. See Mass. R. A. P. 4 (a) (2), as appearing in 481 Mass. 1606 (2019).
This error in the commentary to the Uniform Rules of Summary Process is problematic, particularly because under Mass. R. App. P. 4 (a) (3), as appearing in 481 Mass. 1606 (2019), a "notice of appeal filed before the disposition of any timely motion listed in Rule 4(a)(2) shall have no effect." This means that if a party files a notice of appeal before his or her motion under Mass. R. Civ. P. 60 (b) is decided, that party must refile the notice of appeal within ten days of the judge's decision on the rule 60 (b) motion. See Mass. R. A. P. 4 (a) (3). A tenant who reads the commentary to Rule 11 of the Uniform Summary Process Rules could incorrectly believe, however, that motions under Mass. R. Civ. P. 60 (b) do not affect the timeline for an appeal. And if, as a result, that tenant fails to refile a notice of appeal within ten days of the postjudgment motion decision, an eviction order could issue. See Rule 13 & commentary of the Uniform Summary Process Rules (1980).

There is an exception to the general rule that no execution may issue while a timely-filed appeal from the judgment is pending where the tenant is being evicted from public housing for one of several specified reasons, see G. L. c. 121B, § 32.

If, however, the tenant pays and the landlord accepts in full the underlying money judgment for nonpayment of rent in rented or leased residential premises, as well as any use and occupancy payments, "the [landlord] shall be barred from levying on any execution for possession that has issued" or, if no execution has issued yet, "the [landlord] shall notify the court of the satisfaction of judgment and no execution shall issue thereafter." G. L. c. 239, § 3. Under such circumstances, "the [tenant] shall be considered a lawful tenant." Id. The landlord, however, "shall not be required to accept full satisfaction of the money judgment." Id. If the landlord refuses to accept payment, the eviction can go forward. See id. (landlord's refusal to accept satisfaction of money judgment "shall not be a bar to the enforcement of said judgment in any lawful manner").